COMMONWEALTH vs. EVERETT E. SCHOFIELD.

Plymouth.   April 20, 1983. — June 22, 1983.

Present: GREANEY, CUTTER, & PERRETTA, JJ.

*Constitutional Law*, Waiver of trial by jury.  *Practice, Criminal*, Waiver
of trial by jury.

This court reversed rape and armed robbery convictions where the trial
judge, in holding a colloquy with the defendant to ensure that the de-
fendant's waiver of a jury trial was made voluntarily and intelligently,
had failed to inform the defendant that he had a voice in selecting
jurors and that the verdict must be unanimous, and where there was
nothing in the record to show that the defendant was aware of these
facts.  [200-205] CUTTER, J., dissenting.

INDICTMENTS found and returned in the Superior Court
Department on January 14, 1981.

The cases were heard by *Zobel*, J.

*Brownlow M. Speer* for the defendant.

*Robert S. Sinsheimer*, Assistant District Attorney, for the
Commonwealth.

GREANEY, J.  Schofield was convicted of armed robbery,
G. L. c. 265, § 17, and rape, G. L. c. 265, § 22(*a*), follow-
ing a trial in the Superior Court before a judge without a
jury and was sentenced to a term of imprisonment at the
Massachusetts Correctional Institution at Walpole.  He
challenges the sufficiency of the colloquy conducted by the
judge concerning waiver of his right to trial by jury, claim-
ing that it failed to meet the standards set forth in *Ciummei*
v. *Commonwealth*, 378 Mass. 504 (1979).  Schofield also
asserts that the record fails to show a voluntary and intelli-
gent waiver of his right to a trial by jury.  A majority (here-
after "we") of the panel agrees with the first contention and
concludes that a new trial is necessary.

The evidence of the crimes was uncontradicted. Approximately 1:00 A.M. on December 10, 1980, Schofield entered a Brockton bar which was deserted except for a woman tending bar. After consuming two drinks, he raped the woman at knifepoint and took money from her clothing and from the cash register. Schofield's wallet, hidden at the scene by the victim after it fell from his coat during the rape, led to his arrest later that same morning.

Schofield claimed insanity and three psychiatrists presented expert testimony on that question. All three agreed that Schofield believed that he had been possessed by the devil or by evil spirits, that he had heard "voices" commanding him to do evil things, and that the "voices" had commanded him during the commission of the crimes. The experts differed on the issue of criminal responsibility. The Commonwealth's expert concluded that Schofield had a borderline personality disorder, somewhere "between neurosis and a psychosis," but was legally responsible. The two defense experts found him to be mentally ill at the time of the incident and not responsible for his conduct.

At the commencement of the trial, the judge conducted a colloquy, set out in the margin,[1] concerning Schofield's decision to waive trial by jury. The initial question is

---

[1] THE COURT: "Mr. Schofield, my name is Zobel and I'm the Justice of the Superior Court who's going to be trying this case. And I understand that you want to waive your right to a jury."

THE DEFENDANT: "Yes, your Honor."

THE COURT: "Now, before I can approve of your request to waive your right to a jury, I have to be persuaded that you understand all your rights and are giving them up voluntarily. You understand?"

THE DEFENDANT: "Yes."

THE COURT: "Now, I'm going to ask you some questions. If any of my questions are not clear, you just tell me, okay?"

THE DEFENDANT: "Yes." [Then followed preliminary questions concerning Schofield's age (twenty-seven, at the time of trial), education (ninth grade), occupation (cook), and military service (none)].

THE COURT: "You understand that jury trial means that the twelve people in a jury box decide whether or not your are guilty?"

THE DEFENDANT: "Yes, I do."

THE COURT: "And if you give up that right to a jury trial, it means that

whether the colloquy satisfied the requirements of *Ciummei* v. *Commonwealth, supra.*

In *Ciummei,* the Supreme Judicial Court held that, to be adequate to sustain a conviction, a waiver of the right to a trial by jury requires not only compliance with those provisions calling for a written waiver by the defendant, see Mass.R.Crim.P. 19(a), 378 Mass. 888 (1979); G. L. c. 218, § 27A(g); G. L. c. 263, § 6, but also a colloquy in which "the judge will advise the defendant of his constitutional right to a jury trial, and will satisfy himself that any waiver by the defendant is made voluntarily and intelligently."[2]

a judge, in this case, me, I, will decide —"

THE DEFENDANT: "Yes, I understand."

THE COURT: "— the case? A jury trial is a very fundamental right. You understand that?"

THE DEFENDANT: "Yes, I do."

THE COURT: "That's why I have to be very sure that you are willing to give up that right and are doing it freely and voluntarily. You understand that?"

THE DEFENDANT: "Yes."

THE COURT: "Has anyone promised you or offered you anything to make you give up your right to a jury trial?"

THE DEFENDANT: "No, I have done it on my own. I volunteered."

THE COURT: "Have you discussed this with Mr. Gorman, your lawyer?"

THE DEFENDANT: "Yes, I have."

THE COURT: "Okay. And you are satisfied with the advice which Mr. Gorman has given you?"

THE DEFENDANT: "Yes, I am."

. . . .

THE COURT: "All right. I find that Mr. Schofield is fully aware of his right and that he has knowingly and purposefully and intelligently waived his right to a trial by a jury and I accept the waiver."

[2] The requirement of a colloquy was made applicable to all criminal cases tried in the Superior Court after August 22, 1979. *Ciummei, supra* at 509. Trial of this case commenced on January 25, 1982. We note that *Ciummei's* requirements were subsequently extended to jury trials in the District Court, see *Costarelli, petitioner,* 378 Mass. 516 (1979); District Court Supp.R.Crim.P. 2 (1981), to cases in the District Court in which a defendant chooses to forgo his right to a jury trial by admitting to sufficient facts to warrant a finding of not guilty, see *Commonwealth* v. *Duquette,* 386 Mass. 834 (1982), and to the withdrawal of appeals in the jury session of the District Court, see *Commonwealth* v. *Connor,* 14 Mass. App. Ct. 488 (1982).

Because the "new requirement" announced in *Ciummei* was expressly "made completely prospective," *id.* at 511, it was not applied in the

*Ciummei, supra* at 509. The *Ciummei* colloquy requirement is premised on the concepts that the right to trial by jury is fundamental to our system of justice and that the right can only be waived by a conscious and deliberate decision of the defendant himself. See *Patton* v. *United States*, 281 U.S. 276, 288-290, 312 (1930).

By way of illustration, and with an express disavowal of any "inten[t] to create a rigid pattern," the court in *Ciummei* noted that "*where a defendant needs a compendious reminder, the judge might state* that the jury consists of members of the community, that the defendant may participate in their selection, that the verdict of the jury must be unanimous, that they decide guilt or innocence while the judge makes rulings of law in the course of the trial, instructs the jury on the law, and imposes sentence in case of guilt, and that, where a jury is waived, the judge alone decides guilt or innocence in accordance with the facts and the law." *Ciummei, supra* at 509-510 (emphasis added). It is without question the better practice to cover in the colloquy all of the attributes of the jury trial and the important distinctions between jury and jury-waived trials which are enumerated in *Ciummei*. We reject, however, the notion that the failure of a colloquy exhaustively to survey the field implies failure of the colloquy itself. It is by now axiomatic that "whether or not there is an intelligent, competent, self-protecting waiver of jury trial by an accused must depend upon the unique circumstances of each case." *Adams* v. *United States ex rel. McCann*, 317 U.S. 269, 278 (1942). See *Commonwealth* v. *Dietrich*, 381 Mass. 458, 460 (1980).

This principle, however, implies the corollary, expressly acknowledged in *Ciummei*, that "the judge's responsibility should not be 'discharged as a mere matter of rote,' but

---

*Ciummei* case itself. The jury waiver by *Ciummei*, a person evidencing "some retardation," but determined to be "aware of his current legal situation and able to cooperate with his attorney in a rational way," was upheld based on his multiple discussions with counsel on the matter, counsel's "careful and conscientious" explanations and Ciummei's previous court experience. *Id.* at 513-514.

rather 'with sound and advised discretion.'" *Ciummei,* *supra* at 510 (quoting from *Patton* v. *United States, supra* at 312). The hypostasis of the *Ciummei* decision is the directive that the judge, through the procedure of the colloquy, advise the defendant of the right of jury trial and "satisfy himself that [the] waiver . . . is made voluntarily and intelligently." *Id.* at 509. The judge need not rely on any particular formula for the required dialogue, and in determining the detail of the interrogation which is necessary in a particular case he may consider (as we cannot) the defendant's demeanor, attentiveness and apparent perception in answering questions which are put to him. The judge's determination is not likely to be disturbed simply because the colloquy involved less than an exhaustive description of the ramifications of the defendant's decision, *provided* (and this is the crucial point) that the dialogue is sufficient to furnish the judge with the information necessary to warrant findings that the defendant is (1) aware of the differences between jury and jury-waived trials;[3] (2) that he has not been coerced or improperly influenced in his decision; and (3) that he is, at the time of the waiver, capable of rational judgment. Not to be disregarded either, is *Ciummei's* explicit direction that the necessary solemnization of the waiver appear through a "clear record." *Ibid.*

The difficulty in this case lies in the first finding. There is absolutely no indication in the colloquy that Schofield was likely aware of the factors, set out in *Ciummei,* which distinguish the two forms of trial, particularly the critical information that the defendant has a voice in selecting the jurors and that their verdict must be unanimous. This deficiency is not remedied elsewhere in the record.[4] If a

---

[3] This information may be imparted to the defendant by his counsel and may be impressed on the record at the time of the waiver by appropriate questions either to counsel or the defendant about the content of counsel's explanation of the jury right.

[4] We perceive no restraint which prohibits an appellate court from examining the record outside the colloquy for indications that the defendant in fact had the knowledge requisite to an intelligent waiver, thereby per-

colloquy initially fails to elicit responses which indicate the requisite awareness, then the defendant "needs a compendious reminder," *id.* at 510, and must be informed of the relevant factors by the judge. No such reminder was furnished Schofield. We conclude that Schofield cannot be said to have "indicated a comprehension of the nature of the choice", *ibid.*, by his answers to the questions put by the judge.

The Commonwealth argues that the defendant waived his right to a more complete *Ciummei* colloquy when his counsel responded in the negative upon being asked by the judge if he (counsel) desired additional questions to be asked of the defendant. The argument is unsound. The underlying rationale of *Ciummei* is that without the colloquy the trial judge's task of determining the validity of the jury waiver may be problematical. To allow waiver of the colloquy would deprive the court of the most effective means of testing the defendant's comprehension of his decision and safeguarding his interest in the right of jury trial, which is one of constitutional dimension. Submission to the colloquy procedure involves no counterbalancing "risk" to the defendant. We hold that it cannot be waived.

The argument that because waiver of jury trial involves a tactical decision to a defendant may be assumed to have discussed with his lawyer all possible strategic benefits of a jury trial (including the right of participation in jury selection and the unanimity requirement) presents a similar red herring. Of course, waiver of jury trial involves a tactical judgment. But to assume that, in discussing strategy, counsel will always cover all the important factors assumes too

---

mitting the application of a "harmless error" analysis to any deficiency in the colloquy. Such knowledge might be inferred, for example, from a clear showing in the record that a defendant had been previously tried before a jury. We have conducted an independent review of Schofield's prior criminal record. That record, although showing his prior sentences for serious offenses, indicates that he has never been tried before a jury or waived a jury before.

much. Such an assumption swallows the rule and would, for all practical purposes, render the *Ciummei* decision nugatory.[5]

We have considered the possibility of remanding the case to ascertain whether Schofield's counsel covered the necessary information, mindful, however, that in cases involving near total abrogation of the colloquy procedure we have on prior occasions simply ordered new trials. See *Commonwealth* v. *Thompson*, 15 Mass. App. Ct. 974 (1983);[6] *Commonwealth* v. *Abreu*, 15 Mass. App. Ct. 1006 (1983). As previously noted, the *Ciummei* court emphasized (at 509) that there must be a "clear record" of the waiver before the trial commences. In view of this admonition, and considering the difficulties inherent in retrospectively determining the validity of a waiver upon an unrecorded consultation between lawyer and client held some time ago, we think the remand approach unwise. Because the sufficient basis required by *Ciummei* for determining the waiver's validity is not present, we conclude that Schofield must be given a new trial on the two indictments before us. We do so unhappily because the effort to have a meaningful colloquy was assiduous and in all other respects the trial was soundly managed and fair. Having so decided, we find it unnecessary to reach the defendant's remaining argument.

---

[5] Indeed if the assumption were valid the entire colloquy could be limited to two questions addressed to the defendant: (1) Have you discussed waiver of jury with your counsel?, and (2) Are you satisfied with your counsel's advice? As to the propriety of an approach not unlike this, see *Commonwealth* v. *Thompson*, 15 Mass. App. Ct. 974 (1983), discussed in n.6, *infra*.

[6] Although the information does not appear in the report of the case, we have reviewed the record on appeal in *Thompson* and find that the full extent of the questioning concerning the defendant's understanding of the implication of jury waiver consisted of a single query, directed to counsel, as to whether the significance of the decision had been explained to the defendant. The question did not call for (and the affirmative answer did not contain) any specific information about the content of counsel's explanations.

The judgments on indictment no. 74964 and indictment no. 74967 are reversed and the findings on those indictments are set aside. The defendant is to be retried on both indictments before a jury.[7]

*So ordered.*

CUTTER, J. (dissenting). Schofield was arrested very promptly after the commission of the offenses with which he was charged. The victim of the rape gave clear and concise testimony and was not shaken on cross-examination. The evidence, as the majority opinion states, "was uncontradicted."

Schofield was represented by an attorney from the Massachusetts Defenders Committee who appears to have prepared thoroughly his case asserting lack of criminal responsibility, and to have obtained expert psychiatric witnesses of some standing. He advised the trial judge in a brief conference just before trial that he would have "just two witnesses, two psychiatrists," and a tape, and that the case was to be jury-waived. There was discussion of problems about scheduling the expert medical witnesses on each side.[1]

After the disclosure mentioned in n.1, defense counsel indicated that Schofield "would be prepared to waive his right to a jury trial." The trial judge indicated that he would like to have Schofield sit in the front row of the jury box during his inquiry so that the judge could "see his face." Then ensued the colloquy reproduced in n.1 of the majority opinion.

I perceive nothing in *Ciummei* v. *Commonwealth,* 378 Mass. 504, 508-511 (1979), which requires a greater inquiry

---

[7] We treat the defendant's appeal as an implicit demand for a jury trial.

[1] Defense counsel, before Schofield waived trial by jury in person, brought to the attention of the trial judge that the victim had been called as a witness by another attorney from the Massachusetts Defenders Committee in another unrelated case in the same court. Schofield had been informed of this and did not object on any ground of conflict of interest. The judge correctly ruled that there was no impropriety.

by a trial judge than was made in this case. This was not questioning of Schofield "as a mere matter of rote." See the *Ciummei* case at 510. The *Ciummei* opinion states (at 509-510) that the court did "not intend to create a rigid pattern." I view the language (at the top of 510) merely as suggestions of possible lines of inquiry "where a defendant needs a compendious reminder" of the extent of his rights. The judge saw Schofield and had opportunity to appraise his capacity to understand. I would suppose that the trial judge's inquiry was sufficient to satisfy himself that the defendant was aware of his rights, that his decision was voluntary and not coerced, and especially that he had consulted with his attorney about his action.

Here the attorney (see n.1) had already shown himself to be both perceptive and conscientious. A trial judge should be slow to second guess the trial tactics of a competent attorney.[2]

The majority opinion concedes that "in all other respects the trial was soundly managed and fair" but reverses and causes a new trial solely on the supposed inadequacy of the jury waiver colloquy. Not only does the colloquy seem to me wholly adequate, but the trial judge afforded Schofield's counsel opportunity to suggest further inquiry. That no suggestions were made by counsel may not amount to a waiver. It certainly indicates, however, that the trial judge, acting conscientiously, was trying to afford full opportunity for any last minute change of position. To paraphrase the much more concise dissent of Judge Dumbauld in *United States* v. *Taborda*, 635 F.2d 131, 141 (2d Cir. 1980), I would affirm simpliciter.

---

[2] Here Schofield, charged with a callous rape, had the opportunity for trial before a perceptive judge with an academic background. He and his counsel knew that the significant decision as to guilt must be made upon expert psychiatric testimony. See *Commonwealth* v. *McHoul,* 352 Mass. 544 (1967). They each reasonably may have believed that (a) waiver of a jury might result in a more measured appraisal (than would be given by a jury) of the circumstances of the rape, and (b) a judge might be more receptive than a jury to expert evidence of the type which they expected to offer.