COMMONWEALTH vs. ROBERT C. NOLAN.

Middlesex.  November 21, 1984. — March 20, 1985.

Present: ARMSTRONG, KAPLAN, & SMITH, JJ.

*Practice, Criminal,* Plea, Postconviction relief.

Although, when he pleaded guilty, a criminal defendant was not told, as
    required by Mass.R.Crim.P. 12(c) (3) (A), that by his pleas he waived
    his right to confront witnesses against him and his privilege against
    self-incrimination, he was not thereby entitled to the allowance of his
    postconviction motion under Mass.R.Crim.P. 30 (b) for leave to with-
    draw his pleas, where the judge was warranted in concluding on the
    contemporaneous record that the defendant had offered his pleas freely
    and voluntarily, and where there was no plausible showing "that justice
    may not have been done." [497-501]

INDICTMENTS found and returned in the Superior Court De-
partment on April 1, 1982.

A motion for leave to withdraw pleas of guilty was heard
by *Sandra L. Hamlin,* J.

*Steven J. Rappaport* for the defendant.

*Jeffrey B. Abramson,* Assistant District Attorney, for the
Commonwealth.

KAPLAN, J. We hold that a judge of the Superior Court
committed no error when, in the situation to be described, she
denied a second postconviction motion of the defendant Nolan
to withdraw his pleas of guilty and proceed to trial.

1. This is the second appearance of the case in our court.
We leave a statement of the first appeal to n.4 below, and
deal, in summary, with the record pertinent to the present
appeal.

On April 1, 1982, indictments were returned against the
defendant for armed assault in a dwelling with intent to commit
a felony (G. L. c. 265, § 18A) and assault and battery by
means of a dangerous weapon (G. L. c. 265, § 15A). On July 12,

1982, before trial, the defendant offered to change his not guilty pleas to pleas of guilty. After a colloquy in open court, the judge accepted the pleas, and on August 16, 1982, she sentenced the defendant to imprisonment for ten to fifteen years on the first mentioned charge, and eight to ten years, concurrent, on the second.

Some fourteen months after sentence, we find the defendant moving under Rule 30(b) of the Massachusetts Rules of Criminal Procedure, 378 Mass. 900 (1979), for a "new trial."[1] This was on the ground that he had not offered the guilty pleas voluntarily or knowingly, in that the colloquy preceding the pleas failed to conform to the procedure set out in Mass.R.Crim.P. 12, 378 Mass. 866 (1979).

As explained in *Commonwealth* v. *Foster,* 368 Mass. 100, 108 nn.6 & 7 (1975), a defendant attacking a conviction based upon a guilty plea has a choice between two tactics. He may stand on the contemporaneous record, the record made in the case through the stage of the colloquy and conviction. If the defendant chooses this route, it is not open to the Commonwealth to introduce extraneous evidence tending to show that the defendant in fact acted freely and intelligently in tendering the plea. See *Commonwealth* v. *Swift,* 382 Mass. 78, 84 (1980). Alternatively, the defendant may offer extraneous evidence to supplement (or contradict) the record, but in that event the Commonwealth has a like right to offer evidence. In the present case the defendant elected the first alternative.

The colloquy of record went thus. Defendant's counsel stated that these were not "negotiated" pleas. The defendant offered his guilty pleas and, being sworn, answered questions put to him by the judge so that she might determine, as she said, whether his changes of plea were voluntary and knowing. He was twenty-two years of age, had no trouble with the English

---

[1] Rule 30(b) provides: "NEW TRIAL. The trial judge upon motion in writing may grant a new trial at any time if it appears that justice may not have been done. Upon the motion the trial judge shall make such findings of fact as are necessary to resolve the defendant's allegations of error of law." That such a motion is appropriate for attacking a guilty plea, see *Commonwealth* v. *DeMarco,* 387 Mass. 481, 482 (1982).

language, and had never been treated for mental illness, nor was he then mentally ill.

Then the assistant district attorney stated the facts that the Commonwealth was prepared to prove (defendant's counsel having no reservation):

In the early morning of October 25, 1981, the defendant telephoned the victim, his girlfriend, threatened her, and said he was coming over to her place. The victim called the police and they appeared promptly. Five minutes after they left, the defendant broke down the back door, entered the victim's bedroom, and stabbed her. Within ten minutes the police arrived. They found the defendant in the kitchen and arrested him. The knife was located in the kitchen and was identified by the victim. (Defendant's counsel did not wish to add to this recital.)

The defendant admitted his acts as stated, and said again that he wanted to plead guilty. The judge told him, and he indicated understanding, that he had an absolute right, if he chose, to a trial with or without a jury; by pleading guilty he was admitting the facts and leaving it to the judge to impose the appropriate sentences; the statutory penalties were such and such but the judge would not exceed the prosecutor's recommendations (and the prosecutor had not asked for an "on and after" sentence). The defendant acknowledged that he had not been induced to offer the pleas by any promises or threats or force. He had discussed the matter fully with his counsel who had fairly represented him and acted in his best interests. Finally, he was not confused and was making the pleas willingly, freely, and voluntarily. He had no questions that he wanted to ask the judge.

Thereupon the judge accepted the pleas and sentencing followed as indicated.

Upon the rule 30(b) motion, counsel attacked the conviction on the ground that the defendant was not advised during the colloquy about his waiver of rights of confrontation and against self-incrimination as set out in Mass.R.Crim.P. 12(c)(3)(A).[2]

---

[2] The rule is elaborate. We set out only subdivision (c)(3)(A) which provides: "*Notice of Consequences of Plea.* The judge shall inform the de-

The trial judge, considering the motion, reviewed the record, known to her at first hand. Upon findings,[3] and with discussion of the law, she denied the motion, concluding that there was an affirmative showing, despite the breach of rule 12(c)(3)(A) which she regarded as minor, that the defendant acted freely and intelligently. The defendant took his appeal.[4]

2. As a general proposition, a guilty plea may be withdrawn or nullified when it does not appear affirmatively that the defendant offered the plea voluntarily and knowingly. This is a doctrine of constitutional law. See *Boykin* v. *Alabama,* 395 U.S. 238, 242-243 (1969); *Brady* v. *United States,* 397 U.S. 742, 748 (1970); *Commonwealth* v. *Foster,* 368 Mass. at 106. Our rule 12, entitled "Pleas and Withdrawal of Pleas," especially at subdivision (c), announces a procedure by which the

---

fendant, or permit defense counsel under the direction of the judge to inform the defendant, on the record, in open court:

"(A) that by his plea of guilty or nolo contendere he waives his right to trial with or without a jury, his right to confrontation of witnesses, and his privilege against self-incrimination; . . ."

[3] See note 10, second paragraph, *infra.*

[4] There had been an earlier appeal. On December 6, 1982, the defendant filed a motion on his own behalf for leave to withdraw his guilty pleas. His affidavit asserted that his counsel had not informed him that he might receive a sentence that would render him ineligible for parole for five years (so G. L. c. 265, § 18A, provides in terms). The motion prayed also for the appointment of new counsel. On December 28, 1982, the trial judge without a hearing denied the motion in both its parts. It was an appeal from this order that this court decided on September 29, 1983. Counsel (newly appointed by another judge to handle the appeal) abandoned in argument the claim about lack of advice about parole. He pointed, instead, to the omission of reference in the colloquy to confrontation and self-incrimination. Disposing of the appeal, we wrote, *Commonwealth* v. *Nolan,* 16 Mass. App. Ct. 994 (1983): (1) The motion, as originally framed, was correctly denied. See *Commonwealth* v. *Jefferson,* 4 Mass. App. Ct. 352, 356 (1976); *Commonwealth* v. *Cepulonis,* 9 Mass. App. Ct. 302, 311 (1980), and cases cited. (2) In our view there was no per se rule that entitled a defendant to impeach a conviction solely for the reason latterly relied on by counsel. (3) But as the trial judge had declined to appoint counsel (although correctly, considering the ground for relief urged by the defendant), the defendant should now have leave on remand to present a motion under rule 30(b) to include all grounds he might believe in good faith to exist. A second motion was then filed which is the subject of the present appeal.

defendant submits, the defendant and the judge (with assistance of the lawyers) consider in the form of a colloquy, and the judge then rules on a guilty plea. The procedure is calculated to give reasonable assurance that a defendant is acting without coercion and with an understanding of what he or she is doing in tendering a plea.

Rule 12 should, of course, be followed faithfully, but it is not every omission of a particular from the protocol of the rule that entitles a defendant at some later stage to negate his plea and claim a trial. If there is a slip, and the defendant on that account seeks to withdraw his plea before sentence is imposed, he must furnish a reason (see *Commonwealth* v. *Whitford,* 16 Mass. App. Ct. 448, 449-450 [1983]),[5] but the judge is apt to be relatively lenient toward him in considering the application (unless, perhaps, the Commonwealth can demonstrate prejudice to its interests through action by it in fair reliance on the plea). When, however, a judgment of conviction has entered on a guilty plea, and the defendant thereafter seeks to overthrow the conviction because of a claimed breach of some provision of rule 12, he will have greater difficulty; rightly so, for here an important policy, that of finality, must enter into consideration. This policy has especial weight in regard to convictions on guilty pleas which are, as is well known, the heavily preponderating percentage of all convictions.[6] The distinction between a withdrawal before conviction and one attempted thereafter —

---

[5] At 3 ABA, Standards for Criminal Justice (2d ed. 1982), standard 14-2.1(a) (Plea withdrawal) provides that the reason must be "fair and just." (For the amendment of Rule 32(d) of the Federal Rules of Criminal Procedure expressly adopting this criterion, see note 16, *infra.*)

[6] Judge (now Justice) Stevens said, dissenting in *United States* v. *Smith,* 440 F.2d 521, 528-529 (7th Cir. 1971): "Every inroad on the concept of finality undermines confidence in the integrity of our procedures; and, by increasing the volume of judicial work, inevitably delays and impairs the orderly administration of justice. The impact is greatest when new grounds for setting aside guilty pleas are approved because the vast majority of criminal convictions result from such pleas. Moreover, the concern that unfair procedures may have resulted in the conviction of an innocent defendant is only rarely raised by a petition to set aside a guilty plea." (This passage is quoted by Justice Stevens writing for the Court in *United States* v. *Timmreck,* 441 U.S. 780, 784 [1979].)

in our practice the latter is by the motion under rule 30(b) — was brought out strikingly in *Commonwealth* v. *DeMarco,* 387 Mass. 481, 484-487 (1982).[7] A like distinction is observed in the Federal realm.[8]

If the deviation from rule 12 did not significantly affect the substance of the particular requirement, the postconviction (or "collateral") attack surely fails. See *Commonwealth* v. *DeMarco,* 387 Mass. at 486; *Commonwealth* v. *Johnson,* 11 Mass. App. Ct. 835, 841 (1981); *Commonwealth* v. *Cavanaugh,* 12 Mass. App. Ct. 543, 545-546 (1981). Cf. *Commonwealth* v. *Sullivan,* 385 Mass. 487, 505-507 (1982); *Commonwealth* v. *Perry,* 389 Mass. 464, 471 (1983).[9] On the

---

[7] The court noted the distinction between a motion before sentence (see rule 12[c][2][B], pertinent in the *DeMarco* case) and a postconviction motion under rule 30(b) with its stated standard. The court elaborated on the values involved in the principle of finality as applied to the latter class of cases. At 484-487.

[8] There has been more leniency in allowing a withdrawal of plea where this is claimed on "direct appeal" from the conviction (i.e., appeal from the judgment of conviction on the ground that an application to withdraw the plea before sentence was erroneously refused), than where the application comes by way of later collateral attack on the conviction. Compare *McCarthy* v. *United States,* 394 U.S. 459 (1969), with *United States* v. *Timmreck,* 441 U.S. 780 (1979). Cf. *United States* v. *Tabory,* 462 F.2d 352, 354 (4th Cir. 1972); *United States* v. *Kobrosky,* 711 F.2d 449, 454-457 (1st Cir. 1983). It may be added that, after Federal rule 11 governing plea withdrawal was given greater elaboration by an amendment in 1975 (in that form it provided one of the sources for our rule 12), a tendency arose to be more rigorous about allowing withdrawal even in cases of direct appeal. See, e.g., *United States* v. *Dayton,* 604 F.2d 931, 939-941 (5th Cir. 1979), cert. denied, 445 U.S. 904 (1980); and Federal authorities cited in *Commonwealth* v. *DeMarco,* 387 Mass. at 486 nn.11-12. Note also a 1983 amendment to rule 11, adding subdivision (h): "*Harmless Error.* Any variance from the procedures required by this rule which does not affect substantial rights shall be disregarded."

[9] On this point comparison is invited with *Commonwealth* v. *Schofield,* 391 Mass. 772 (1984), *S.C.,* 16 Mass. App. Ct. 199 (1983), where the courts disagreed in their respective interpretations of *Ciummei* v. *Commonwealth,* 378 Mass. 504 (1979), dealing with the procedure for waiving a jury which is to include a colloquy with the defendant. *Schofield* was an attempt to undo a criminal conviction on the ground that the colloquy had been inadequate. The opinion in 391 Mass., holding against the defendant, appears aimed at maintaining the essentials of the procedure rather than this

other hand, the omission of an assurance integral to the satisfaction of the constitutional standard should be and is ground for withdrawal of the plea and allowance of a new trial. This is true of any case where the colloquy was so perfunctory or incomplete as to be in effect nugatory. See *Commonwealth* v. *Foster,* 368 Mass. at 102. Cf. *Boykin* v. *Alabama,* 395 U.S. at 244. In the recent case of *Commonwealth* v. *Fernandes,* 390 Mass. 714, 717-718 (1984), there was indeed a colloquy, but there was no inquiry about consultation with counsel or about coercion or other wrongful inducement of the guilty plea. Thus there was a failure of affirmative assurance on the key factors of understanding and voluntariness. In respect to voluntariness, the defendant had presented affidavits tending to show in circumstantial detail that there had been coercion, but the court was able to rest its decision for the defendant on the inadequacy of the record itself. See also *Commonwealth* v. *Dawson, ante* 221, 223 (1985).

3. The present problem is whether there was a fatal defect where the defendant was given to understand that he was waiving his right to a trial (including the jury right), but was not told expressly of the interstitial rights that were being concomitantly waived. In such cases we think there is no per se rule that operates to vitiate the plea (see our decision on the previous appeal, n.4 above); there must be some factor of hurt to the defendant to justify that result. This conclusion seems to us to follow from a number of considerations.

(a) We know out of hand that a guilty plea, otherwise meeting the requirements of being intelligent as well as voluntary, is not rendered constitutionally infirm by the fact that none of the specific legal rights involved in the waiver — the trial right, right to confront witnesses, and right against self-incrimination — is brought to the defendant's attention during the colloquy. This is made clear by the result of *Brady* v. *United States, supra,* and the decision in *Commonwealth* v. *Morrow,* 363 Mass. 601, 604-605 (1973). See also *Commonwealth* v.

---

or that detail; especially so after a full trial has been had, although without a jury. See *Commonwealth* v. *Abreu,* 391 Mass. 777 (1984), where an essential deficiency was found.

*Jefferson,* 4 Mass. App. Ct. 352, 356 (1976); 2 LaFave & Israel, Criminal Procedure § 20.4 at 651-652 (1984). Cf. *Commonwealth* v. *Earl,* 393 Mass. 738, 740-741 (1985). The present case is, indeed, stronger for the Commonwealth than *Brady* because the trial right was specifically mentioned and it is, in fact, but a small step from a defendant's understanding about forgoing a trial to his realization, whether or not in the front of his consciousness, that he is also surrendering guaranties internal to the trial, in exchange for the advantages of the guilty plea.[10]

(b) Even though the colloquy and acceptance of the guilty plea satisfied the constitutional measure, the argument remains that the colloquy was at such a level that, in going to conviction upon it, "justice may not have been done" —the criterion of rule 30(b). We can, however, fairly predicate that what is wanted from the colloquy is the basic assurances that the defendant, represented by counsel, with whom he has consulted, is free of coercion or the like, understands the nature of the crime charged,[11] knows the extent of his guilt, recognizes the basic penal consequences involved,[12] and is aware that he can

---

[10] A defendant, waiving trial, would be likely from common experience to know that trial involves the questioning of witnesses. And common knowledge about police warnings to a suspect, in which the first admonition is that he need not talk, can easily carry over to the event of trial. However, our decision herein does not depend on these speculations.

The judge below examined the defendant's prior criminal record and observed that, after numerous appearances in court, the defendant was probably knowledgeable about what was entailed in his waiver of trial. The defendant's criminal record prior to the date of the colloquy may be regarded as part of the "contemporaneous record" rather than as extraneous evidence, cf. *Commonwealth* v. *Schofield,* 16 Mass. App. Ct. 199, 203 n.4 (1983), *S.C.,* 391 Mass. 722 (1984), but here that prior experience was not strongly indicative because the judge did not say whether the defendant had stood trial, pleaded guilty, or been otherwise involved. The judge also mentioned events after the colloquy, including four guilty pleas by the defendant. The Commonwealth very properly concedes that the latter material was extraneous and should not count where the defendant was relying solely on the contemporaneous record. It is on that record that our decision rests (and it seems reasonably clear that the judge would have ruled similarly on that basis alone).

[11] Compare *Commonwealth* v. *Begin,* 394 Mass. 192 (1985).

[12] Compare *Commonwealth* v. *Santiago,* 394 Mass. 25 (1985).

have a trial if he wants one.[13] The omission of reference to the intra-trial rights does not go to any of these essentials.

Our problem has arisen in the Federal courts and we can find a parallel, although not an exact one, in the Federal decisions. These point to the proposition that omission of reference to confrontation or self-incrimination in the colloquy called for by Fed.R.Crim.P. 11,[14] when urged by way of collateral attack, will be ineffectual as ground for vacating the conviction unless it be shown with some plausibility that it would have made a difference to the defendant in deciding about a plea if he had been told about the intra-trial rights. See *United States* v. *Nuckols,* 606 F.2d 566, 568 (5th Cir. 1979); *United States* v. *Hobson,* 686 F.2d 628, 630 (8th Cir. 1982). See also *United States* v. *Webb,* 433 F.2d 400, 403 (1st Cir. 1970), cert. denied, 401 U.S. 958 (1971) (applying rule 11 in its pre-1975 form); *United States* v. *Tursi,* 576 F.2d 396, 399 (1st Cir. 1978) (same).[15] There are decisions that adopt the position just stated with respect to the two rights even on direct appeal. See *United States* v. *Michaelson,* 552 F.2d 472, 477 (2d Cir. 1977); *United States* v. *Saft,* 558 F.2d 1073, 1080-1081 (2d Cir. 1977); *United States* v. *Burnett,* 671 F.2d 709, 711-713 (2d Cir.

---

[13] And see 3 ABA, note 5 *supra,* standard 14.2.1(b)(ii)(A)-(F), illustrating deficiencies that might justify withdrawal of pleas.

[14] Subdivision (c)(3) of Federal rule 11 is cognate to our Mass.R.Crim.P. 12(c)(3)(A). It provides: "Advice to Defendant. Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform him of, and determine that he understands, the following:

"(3) that he has the right to plead not guilty or to persist in that plea if it has already been made, and he has the right to be tried by a jury and at that trial has the right to the assistance of counsel, the right to confront and cross-examine witnesses against him, and the right not to be compelled to incriminate himself; . . ."

[15] The suggestion that a defendant needs thus to come forward appears in a number of cases where the matter omitted from the colloquy is of more substantial concern to him than the intra-trial rights. See *United States* v. *Horsley,* 599 F.2d 1265, 1269 (3d Cir.) (en banc), cert. denied, 444 U.S. 865 (1979); *United States* v. *Cepulonis,* 699 F.2d 573, 577 (1st Cir. 1983); *United States* v. *Patterson,* 739 F.2d 191, 195 (5th Cir. 1984). But cf. *Mack* v. *United States,* 635 F.2d 20, 24-26 (1st Cir. 1980); *Godwin* v. *United States,* 687 F.2d 585, 591 (2d Cir. 1982).

1982). See also *United States* v. *Caston,* 615 F.2d 1111, 1113-1115 (5th Cir.), cert. denied, 449 U.S. 831 (1980). But see *United States* v. *Carter,* 619 F.2d 293, 294-295 (3d Cir. 1980).

It is true that the Federal cases on collateral attack arose under Federal rule 32(d) where the stated standard was "manifest injustice,"[16] or under 28 U.S.C. § 2255 (1982) (habeas corpus — Federal custody; remedies on attacking sentence), where varying standards seem to be applied that may or may not be roughly equivalent to "manifest injustice."[17] These are rigorous standards; but then we are reminded in the *DeMarco* case, 387 Mass. at 487, that our rule 30(b) standard is to be applied "rigorously." There may be some margin of difference, but it does not appear to be a crucial one. The defendant in the present case has not attempted any plausible showing of the materiality to him of the failure to mention the intra-trial rights. Such an attempt he might have made by using his alter-

---

[16] Rule 32(d) before a 1983 amendment stated: "Withdrawal of Plea of Guilty. A motion to withdraw a plea of guilty or nolo contendere may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea."

The text after amendment is: "Plea Withdrawal. If a motion for withdrawal of a plea of guilty or nolo contendere is made before sentence is imposed, imposition of sentence is suspended, or disposition is had under 18 U.S.C. § 4205(c) [court may alter sentence after receiving report on prisoner's background], the court may permit withdrawal of the plea upon a showing by the defendant of any fair and just reason. At any later time, a plea may be set aside only on direct appeal or by motion under 28 U.S.C. § 2255."

[17] Section 2255 provides in part: "A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside, or correct the sentence."

For the varying statements of the standard to be met for collateral attack, see *DelVecchio* v. *United States,* 556 F.2d 106, 111 (2d Cir. 1977); *United States* v. *Fels,* 599 F.2d 142, 149 n.5 (7th Cir. 1979). *United States* v. *Rivera-Ramirez,* 715 F.2d 453, 455-457 (9th Cir. 1983), cert. denied, 467 U.S. 1215 (1984).

native of producing extraneous evidence to be added to the contemporaneous record.[18]

(c) As is usual upon a motion for a new trial under rule 30(b), the trial judge has a residual discretion. The judge may rule in favor of the defendant even where the defendant has not been able to furnish a specific indication of hurt. Reexamining the record of the colloquy on the plea, and retaining a memory of how it unfolded and of the reactions and behavior of the defendant on that occasion, the judge may be prepared to conclude that the defect in the plea does warrant relief. Compare *Commonwealth* v. *Dawson, ante* 221, 223 n.6 (1985). In the present case, a quite simple one on the facts, the judge did reflect on the plea proceedings, but was not moved to act in the defendant's favor.[19]

4.  We have here one of many appeals about attempted withdrawal of guilty pleas. These involve expenditures of time and effort by lawyers and judges, not to speak of the raising of hopes among prisoners, usually only to be dashed. All this could be minimized if not wholly avoided, and justice better and more humanely administered in the first instance, if judges permitted themselves to be assisted by the carefully drafted and fully inclusive model questionnaires that have long been available.[20]

There is abroad the notion that the going system of bargained sentences — the prevalent occasion for guilty pleas, although not present here — is inherently undesirable, and that the safeguards of procedures such as our rule 12 or Federal rule 11 cannot purge the system. Whatever element of truth there may be in that observation, the prophylaxis, at least, can be

---

[18] We conceive that the defendant would have the burden of production, but the burden of persuasion would still rest on the Commonwealth.

[19] There is no strain in considering that the judge's impressions of the plea proceedings form a part of the contemporaneous record. Compare note 10, second paragraph, above.

[20] A questionnaire, said to be used by Superior Court judges "in most instances," appears in Smith, Criminal Practice and Procedure § 1238 (2d ed. 1983). See also the model questionnaire in the appendix to chapter 14 (at 14-92) of the ABA standards, n.5 above.

improved by judges' referring to patterned questionnaires rather than risking omissions or other defects through improvisations on the spot. We do not suggest that any model should be followed mechanically; indeed such a practice would be unwise because it could interfere with a probing exchange. Nevertheless a model can serve as a guide and checklist. We would suggest, as well, that a duty is cast on the lawyers on both sides to be alert and helpful if it appears that the judge through inadvertence may not be carrying out the full requirements of the rule.

*Order affirmed.*