COMMONWEALTH *vs.* ANTONIO PAVAO.

No. 94-P-1703.

Bristol. April 11, 1995. - December 6, 1995.

Present: PERRETTA, PORADA, & LAURENCE, JJ.

Further appellate review granted, 422 Mass. 1103 (1996).

*Constitutional Law*, Trial by jury, Waiver of constitutional rights. *Practice, Criminal*, Waiver of trial by jury. *Error, Harmless. Attorney at Law*, Canons of ethics.

Discussion of the requirement of *Ciummei* v. *Commonwealth*, 378 Mass. 504 (1979), and cases thereunder, that the judge in a criminal case hold a colloquy to determine whether a proposed waiver by the defendant of his constitutional right to trial by jury is being made voluntarily and intelligently. [493-494]

In the unique circumstances of a criminal trial, in which the judge erred by conducting no colloquy with the defendant before accepting his written waiver of trial by jury tendered in conformance with G. L. c. 263, § 6, reversal of the defendant's subsequent convictions was not required where the error did not contaminate the integrity of the process and could not have adversely affected either the outcome of the proceeding or any of the defendant's substantial rights. [494-499]

INDICTMENTS found and returned in the Superior Court Department on October 21, 1992, and February 10, 1993, respectively.

The cases were heard by *Patrick F. Brady*, J.

*John F. Palmer* for the defendant.

*Mary O'Neill*, Special Assistant District Attorney, for the Commonwealth.

LAURENCE, J. The defendant, Antonio Pavao, was indicted in Bristol County in October, 1992, and February, 1993, on three counts of rape, four counts of disseminating matter harmful to minors, and five counts of indecent assault and battery on a child under the age of fourteen. The victims of the crimes charged were five girls, nine to ten years old. As trial was about to begin on November 1, 1993, Pavao's trial

counsel (who is not his appellate counsel) filed a written jury waiver, pursuant to G. L. c. 263, § 6, and Mass.R.Crim.P. 19(a), 378 Mass. 888 (1979). The preprinted waiver form was signed by Pavao. Above his signature, the form said simply, "Under the provisions of General Laws Chapter 263, Section 6, I hereby waive my right to trial by jury."[1]

Despite the holding in *Ciummei* v. *Commonwealth*, 378 Mass. 504, 509-511 (1979), that a trial judge should hold a colloquy to determine whether a proposed waiver of a criminal defendant's constitutional right to trial by jury was being made voluntarily and intelligently, the trial judge here simply received the form handed up to him by Pavao's counsel and accepted counsel's assurance that Pavao had in fact executed it. The prosecutor, not familiar with the *Ciummei* case, did not remind the judge of the colloquy requirement. Defense counsel was aware that the judge and the prosecutor were overlooking the colloquy. Not only did he fail to call it to the judge's attention, but he deliberately said nothing in the calculated expectation that a ground for automatic reversal had been created should Pavao be convicted.

During the three-day bench trial that followed, Pavao's strategy was to avoid conviction on the rape charges. He himself did not testify. In closing argument, Pavao's counsel admitted Pavao's guilt as to indecent assault and battery but attacked the Commonwealth's rape case as deficient. The judge found Pavao guilty, on November 3, 1993, of the five counts of indecent assault and battery but acquitted him of all other charges. Sentencing was scheduled for several weeks thereafter. On November 4, 1993, the Fall River police detective who had investigated Pavao's crimes informed the prosecutor of a conversation he had just had with Pavao's counsel. Counsel had candidly told the detective that he had known at the time of the jury waiver that the judge and the

---

[1]General Laws c. 263, § 6, as appearing in St. 1979, c. 344, § 19, provides in pertinent part: "Any defendant in a criminal case . . . may, if he shall so elect . . . before a jury has been impanelled . . . waive his right to trial by jury by signing a written waiver thereof and filing the same with the clerk . . . . If the court consents to the waiver, he shall be tried by the court instead of by a jury . . . ."

prosecutor were creating reversible error by omitting the colloquy but had asserted that it was the prosecutor's, not defense counsel's, responsibility to remind the judge of such an omission. Defense counsel confirmed these facts a few days later in a letter to the prosecutor.

A hearing on the matter was held at the prosecutor's behest three weeks later, just prior to the scheduled sentencing. Pavao was not, apparently, present at the hearing. The prosecutor urged the judge either to have a posttrial colloquy or to make a finding, based upon the signed waiver and the judge's observations of Pavao during trial, that Pavao's jury waiver had been made voluntarily and intelligently. Defense counsel again conceded that the evidence supported the findings of Pavao's guilt on the indecent assault and battery charges. He further emphatically assured the court that he had in fact carefully and fully advised Pavao regarding his right to a jury trial and the consequences of giving it up. He nonetheless insisted that a posttrial colloquy was inappropriate and, alluding vaguely to "double jeopardy," contended there was no way to cure the error that had been committed by omission of the colloquy. He stated that defense counsel had no obligation to alert the court to the assertedly fatal absence of a colloquy.

The judge confessed that he "was surprised . . . to learn this was an area where colloquy was required." He took note, however, of the facts that Pavao had executed the proper written jury waiver, had been well represented by experienced counsel, and had consulted with his attorney during the trial. Recalling counsel's trial concession of Pavao's guilt as to the indecent assault and battery counts and the ease with which he had reached a decision thereon, the judge expressed doubt that Pavao would enjoy any different outcome at a trial before a jury. He also observed that, in view of counsel's able representation of Pavao, "it seems incredible to suggest that his waiver was not knowing and voluntary, which, of course, is the purpose of the colloquy"; defense counsel immediately responded, "I'm not suggesting it wasn't

knowingly done."[2] The judge left it that the hearing was a matter of record and saw no need to make further findings or to take any action in the absence of a motion for a new trial. He subsequently sentenced Pavao to concurrent prison terms of from six to ten years, two years to be served and the balance suspended for a probation term of five years. This appeal followed.

Pavao presses a single point: under *Ciummei* and its progeny, the judge's failure to hold any jury-waiver colloquy requires automatic reversal, in every case, regardless of prejudice or any other factor. While acknowledging the importance of the colloquy requirement and the judge's clear error here in not implementing it at the time of the jury trial waiver, we conclude that, in the unique circumstances of this case, no reversible error occurred.

*Ciummei*, 378 Mass. at 509, held that a "colloquy shall be held in any instance of a waiver of the right to trial by jury." The court stressed, however, that such a colloquy was not itself a constitutional requirement. *Id.* at 507-508, 511. The court expressly refused to "constitutionaliz[e] a particular means of demonstrating the legality of the waiver." *Id.* at 508. Rather, the colloquy was prescribed as a prudential supervisory practice "in [the] aid of sound judicial administration." *Id.* at 509. Without a colloquy "the trial judge's task of determining the validity of the jury waiver may be problematical." *Commonwealth* v. *Schofield*, 16 Mass. App. Ct. 199, 204 (1983), *S.C.*, 391 Mass. 772 (1984). A colloquy was deemed the best "practice" for insuring clear evidence of the critical facts to be established prior to judicial acceptance of a jury trial waiver: the voluntary and intelligent nature of the defendant's waiver of that constitutional right. *Ciummei* v. *Commonwealth*, 378 Mass. at 509-510. *Commonwealth* v. *Schofield*, 391 Mass. at 775.

---

[2]Defense counsel also stated: "I assure the court, as an officer of the court, . . . that I conferred with the defendant as an experienced counsel. After forty-one years of experience, I'm sure your Honor could almost take judicial notice that I would be extremely cautious that a waiver was . . . executed in an appropriate fashion, and I assure the court that I did take those steps."

Opinions subsequent to *Ciummei* have recognized that there is no fixed script for such a colloquy. See *Commonwealth* v. *Schofield*, 391 Mass. at 774-776; *Commonwealth* v. *Abreu*, 391 Mass. 777, 779-780 (1984); *Commonwealth* v. *Towers*, 35 Mass. App. Ct. 557, 559-560 (1993). In every decided case, there has occurred something deemed a colloquy. The focus of the application of the *Ciummei* principle has been to determine whether the particular colloquial effort constituted "a minimally adequate colloquy," *Commonwealth* v. *Towers*, 35 Mass. App. Ct. at 559, so as to enable the judge to determine that the defendant was capable of rational judgment; that he was generally aware of the differences between jury and jury-waived trials; and that he was not acting under any improper influence in making the waiver decision. *Commonwealth* v. *Schofield*, 391 Mass. at 774.

There have been several intimations that the total absence of a colloquy may compel reversal. See *id.* at 775; *Commonwealth* v. *Abreu*, 391 Mass. at 779; *Commonwealth* v. *Smith*, 403 Mass. 489, 493 (1988); *Commonwealth* v. *Thetonia*, 27 Mass. App. Ct. 783, 783 (1989); *Commonwealth* v. *Towers*, 35 Mass. App. Ct. at 558 n.2, 560. These have been dicta, however, and no decided case has focused on the factual situation presented here, the effective lack of a jury-waiver colloquy, or has directly held that the omission of such a colloquy necessitates reversal regardless of the circumstances.[3] The Commonwealth argues that the judge's

---

[3]In the only Supreme Judicial Court case reversing a conviction for a jury-waiver colloquy deemed defective, *Commonwealth* v. *Abreu*, 391 Mass. at 778, the so-called "colloquy" was functionally similar, if not identical, to that in the instant situation. It consisted of the judge merely making a conclusory inquiry of the defendant, "do I understand that you have waived your right to a trial by jury . . . ," to which an interpreter (rather than a lawyer) responded simply, "Yes." The court held that "this colloquy *unaccompanied by any other evidence* was inadequate under *Ciummei*" (emphasis added). *Ibid.* The court ruled that "*[t]he record here was inadequate to support a finding that the defendant's waiver was voluntary and intelligent*" (emphasis added), *id.* at 779, stating, "This is not a case where we can say the defendant [who apparently understood and spoke little, if any, English and had no experience with jury trials] clearly

concededly erroneous omission of the colloquy should not be fatal per se. It contends that the oversight is subject to a "harmless error" analysis, and that, on the special facts of this case, Pavao's jury waiver was properly accepted as being voluntary and intelligent.

We adopt the Commonwealth's position. This court has recognized the relevance of the harmless error principle in the jury waiver context. See *Commonwealth* v. *Schofield*, 16 Mass. App. Ct. at 203 n.4, *S.C.*, 391 Mass. at 773-774. Compare G. L. c. 231, § 119, as appearing in St. 1973, c. 1114, § 202 (appellate court is not to disturb a judgment on account of "anything . . . omitted by the trial court . . . [that has not] injuriously affected the substantial rights of the parties"), which we have applied in criminal cases. See *Commonwealth* v. *DiRoma*, 5 Mass. App. Ct. 853, 854 (1977). A similar conclusion has been reached at the Federal level under Fed.R.Crim.P. 52(a). See *United States* v. *Rodriguez*, 888 F.2d 519, 527-528 (7th Cir. 1989). See also *United States* v. *Hasting*, 461 U.S. 499, 506 (1983); *Bank of Nova Scotia* v. *United States*, 487 U.S. 250, 254-256 (1988).[4]

---

understood 'this most precious constitutional right' and, therefore, his waiver was 'a decision regarding trial strategy.'" *Id.* at 780. The court stated further, "*Ciummei* requires that any such colloquy be on the record *if it is to be the basis upon which a judge is to conclude a waiver of the right is voluntary and intelligent*" (emphasis added). *Ibid.* These conclusions indicate that the jury-waiver colloquy is not an invariable sine qua non regardless of all other record circumstances, and are consistent with the fundamental observation of the court in *Commonwealth* v. *Schofield*, 391 Mass. at 775, that "[t]he colloquy primarily is only evidence of whether a defendant's waiver of the right to trial by jury was voluntary and intelligent[,] . . . not an independent constitutionally required prerequisite to a valid waiver of the right to a jury trial."

[4]The Supreme Court of the United States has recognized that even errors involving violations of constitutional rights do not, in most cases, require automatic reversal but are subject to a harmless error analysis. *Chapman* v. *California*, 386 U.S. 18, 24 (1967). *Arizona* v. *Fulminante*, 499 U.S. 279, 306-307 (1991). Only a limited category of errors that are destructive of the very essence of a fair trial, *Chapman* v. *California*, 386 U.S. at 23, which have been characterized as "structural defects," *Arizona* v. *Fulminante*, 499 U.S. at 294-295, 309-310 (e.g., deprivation of the right to counsel, trial before a biased judge, trial before a jury deliberately

Accordingly, we hold that failure to conduct a jury-waiver colloquy — a nonconstitutional defect — may be examined under the standard of prejudicial error: Did the error affect the defendant's "substantial rights?" *Kotteakos* v. *United States*, 328 U.S. 750, 765 (1946). *Commonwealth* v. *Flebotte*, 417 Mass. 348, 353 (1994). See *Commonwealth* v. *Daggett*, 416 Mass. 347, 352 n.5 (1993). Cf. *Commonwealth* v. *Nolan*, 19 Mass. App. Ct. 491, 496 (1985) (if deviation from procedure for accepting guilty plea "did not significantly affect the substance of the particular requirement," the postconviction attack fails). We see no possibility that the defendant's substantial rights were affected, given the totality of the singular circumstances of this case.

Most significantly, we conclude that the judge essentially satisfied himself as to the knowing and intelligent nature of

stripped of members of the defendant's race) require automatic reversal. The vast majority of constitutional errors are deemed "trial errors," or trial process errors, which "may . . . be quantitatively assessed in the context of other evidence presented . . . ." *Id.* at 307-310. "There is a 'strong presumption' that any error will fall into the [second] of these categories. *Rose* v. *Clark*, 478 U.S. 570, 579 (1986). Thus, it is the rare case in which a constitutional violation will not be subject to a harmless error analysis." *Sullivan* v. *Louisiana*, 508 U.S. 275, 282 (1993) (Rehnquist, C.J., concurring).

Although it is arguable that a flawed jury waiver is a structural defect — even upon the very same trial evidence, a jury might have decided differently from the judge — we think it is not such an error as taints the integrity of the entire proceeding so as to render the trial incapable of "reliably serv[ing] its function as a vehicle for the determination of guilt or innocence." *Arizona* v. *Fulminante*, 499 U.S. at 310. Unlike the kind of fundamental defect that defies harmless error analysis because its effects are "unmeasurable" "unquantifiable and indeterminate," *Sullivan* v. *Louisiana*, 508 U.S. at 281-282, "[j]ury trial waiver partakes more of a decision regarding trial strategy." *Ciummei* v. *Commonwealth*, 378 Mass. at 508 n.7. It is the sort of tactical decision that defendants and their trial attorneys are accustomed to make in virtually every prosecution, depending upon the type of offense charged, the personal qualities of the defendant, community attitudes, and other variables of a complex, usually subjective, nature but nonetheless susceptible of calculation and even confident prediction. See *Commonwealth* v. *Dietrich*, 381 Mass. 458, 461-462 (1980). In short, the error in question here is an error that *may* result in a "structural defect" (an involuntary deprivation of the right to a trial by jury), but is not in itself a "structural defect" and hence does not require automatic reversal in the absence of such a result.

Pavao's jury waiver, based upon his ascertainment that Pavao had executed the waiver form, his observations of Pavao consulting with counsel during the trial, and counsel's explicit representations that he had conferred with Pavao regarding the waiver, that he had been "extremely cautious" to ensure that Pavao understood the waiver, and that Pavao had acted freely and knowingly.[5] The judge's implicit conclusion was aptly reflected in his observation that it appeared "incredible" to him that Pavao's waiver was not knowing and voluntary, a view that Pavao's attorney hastened to assure the judge was correct.

The record is devoid of any intimation that Pavao misunderstood the scope and impact of the right he waived. His prior experience with the criminal justice system, which included several convictions of burglaries and operating while under the influence and at least two prior waivers of jury trial that he had executed,[6] demonstrated that he "was no tyro before the courts," *Commonwealth* v. *Bettencourt*, 361 Mass. 515, 518 (1972), and that he was familiar with both jury trials and the procedures involved in jury waivers. See *Commonwealth* v. *Ciummei*, 378 Mass. at 514. Contrast *Commonwealth* v. *Schofield*, 16 Mass. App. Ct. at 204 n.4. Cf. *Commonwealth* v. *Russell*, 37 Mass. App. Ct. 152, 157

---

[5]Although it cannot be assumed merely from a defendant's representation by counsel that he was adequately advised by counsel as to the choice between jury and bench trials, see *Commonwealth* v. *Abreu*, 391 Mass. at 780; *Commonwealth* v. *Schofield*, 16 Mass. App. Ct. at 204-205, the defendant's comprehension of his choice "may be based on information provided to the defendant by . . . the defendant's counsel . . . ." *Commonwealth* v. *Schofield*, 391 Mass. at 776.

[6]Pavao's criminal record was made part of the sentencing proceeding. While Pavao's appeal was pending, the Commonwealth examined the files in several of those prior convictions, discovered the two jury waivers he had executed, and moved to expand the record to include them in its record appendix. Pavao moved to strike them on the ground that they were not properly parts of the record. On the basis of *Commonwealth* v. *Schofield*, 16 Mass. App. Ct. at 203 n.4, *S.C.*, 391 Mass. at 775-776, and on the basis of Mass.R.A.P. 2, 365 Mass. 845 (1974), we deem it both appropriate and just to allow the record to be so expanded and to consider the fact of the prior waivers and to deny Pavao's motion to strike the waivers and the Commonwealth's brief.

(1994) (defendant who admitted to sufficient facts aware of court proceedings from prior trials). There is also no suggestion that Pavao's waiver decision was in any way the product of duress, coercion, undue influence, incompetency, mental or physical incapacity, substance abuse, educational deficits, lack of language skills, or any other factor that might have affected his ability to understand or have rendered his waiver less than voluntary and intelligent.

Additional factors underscore the harmlessness of the colloquy error in this case and negate any but a fanciful suggestion that a different outcome might have resulted had the error not occurred or in the unlikely event Pavao had chosen to have the charges of his multiple child molestations submitted to a jury of his Bristol County peers. Primarily, there appears no reason to believe — and none has been presented — that his strategy, of ultimately admitting his guilt to the lesser indecent assault counts while vigorously contesting his culpability of the more serious rape charges, would have been any different, or that his convictions of the conceded offenses would have been any less probable, had there been either a full colloquy or a jury trial on the same evidence.[7] It is difficult to conceive of a more "just" result than a conviction founded on such a deliberately counseled concession of guilt. See Mass.R.Crim.P. 2(a), 378 Mass. 844 (1979).

Finally, there is no complaint whatsoever about the fairness and integrity of any aspect of Pavao's bench trial, much less a contention that the error here complained of in any way affected the outcome of the trial. We have every reason to conclude that Pavao received "the kind of fair trial which is this country's constitutional goal." *Commonwealth* v. *Miles*, 420 Mass. 67, 71 (1995).

It is "axiomatic that 'whether or not there is an intelligent, competent, self-protecting waiver of jury trial by an accused must depend upon the unique circumstances of each case.'" *Commonwealth* v. *Schofield*, 16 Mass. App. Ct. at 202,

---

[7]There is not the slightest indication in the record or Pavao's brief that the evidence at a jury trial would have differed in the smallest scintilla from that presented at the bench trial.

quoting from *Adams* v. *United States ex rel. McCann*, 317 U.S. 269, 278 (1942). In the circumstances of this case, which we see as unparalleled, the judge's erroneous acceptance of Pavao's waiver without conducting the required colloquy did not contaminate the integrity of the process and could not have adversely affected either the outcome of the proceeding or any of Pavao's substantial rights.

We emphasize the narrow scope of this decision, limited as it is to its peculiar facts. *Ciummei* unquestionably states the controlling principle that should guide trial judges, who should be assiduous to engage in meaningful colloquies whenever criminal defendants choose to waive jury trial. Rarely, if ever, is defense counsel likely to be so candid, when a colloquy is omitted or deficient, as to admit, as occurred here, his client's guilt, his careful explanation to the client of the implications of jury waiver, and the knowing character of his client's decision to waive.

One aspect of defense counsel's representation that was not, but should have been, equally candid requires comment. Acting under the belief that his strategy was justified by the exhortation of Canon 7 of S.J.C. Rule 3:07, the Canons of Ethics — "a lawyer should represent a client zealously within the bounds of the law," 382 Mass. 784 (1981) — Pavao's trial counsel deliberately failed to bring the omission of the colloquy to the court's attention, knowing that the judge and the prosecutor had improperly neglected it and with the anticipation that the oversight would afford him a ground of reversible error should Pavao be convicted. Both Pavao's trial and appellate counsel vigorously defended the professional propriety of this nonfeasance.

We, however, deem such tactical silence to have exceeded the bounds of acceptably zealous representation. "[I]t is not consistent with the purposes of justice, for a party knowing of a secret defect, to proceed and take his chance for a favorable verdict, with the power and intent to annul it, as erroneous and void, if it should be against him." *Commonwealth* v. *Cancel*, 394 Mass. 567, 571-572 (1985), quoting from *Cady* v. *Norton*, 14 Pick. 236, 237 (1833) (Shaw, C.J.).

With specific reference to a colloquy, this court has stated that "a duty is cast on the lawyers on both sides to be alert and helpful if it appears that the judge through inadvertence may not be carrying out the full requirements of the rule" mandating a colloquy. *Commonwealth v. Nolan,* 19 Mass. App. Ct. at 502 (involving a guilty plea).

Under those authorities, defense counsel's proper course was unequivocal: to alert the judge to the error so as to enable its immediate correction. To do so would have complied with long declared professional obligations without in any way inculpating the client, impairing his constitutional rights, prejudicing his legitimate defenses to the indictments, or impeding the ascertainment of the truth, which is the primary function and purpose of the adversary system. Failure to do so — thereby permitting the waste of judicial resources expended in a three-day trial whose viability was knowingly put in jeopardy, as well as compelling the waste of these very appellate proceedings, which would have been unnecessary had counsel correctly called for the colloquy — resulted in prejudice to the administration of justice.

We accept that trial counsel's inaction here was sincerely based upon a common misconception that unremitting pursuit of a client's interest by any and all means short of active fraud is a lawyer's paramount obligation. It does not merit the opprobrious epithets invoked by the Commonwealth ("hoodwinking" and "sandbagging" the judge). Nonetheless, the bar must realize that an attorney's first duty is to further the administration of justice, which mandates candor toward the court. As the Supreme Judicial Court has recently stated:

> "As an officer of the court, an attorney is a 'key component of a system of justice' . . . and is bound to uphold the integrity of that system by being truthful to the court and opposing counsel. Where this duty is in seeming conflict with the client's interest in zealous representation, the latter's interest must yield. Were we to condone any action to the contrary, the integrity of the judicial process would be vitiated. . . . As stated by Justice Quirico, '[T]he courts have emphasized an at-

torney's duty of candor, stemming from his role as an officer of the court . . . . The more persuasive judicial decisions require an attorney to bring material facts to the attention of the court when ignorance by the court is likely to produce an erroneous decision and not just when his opponent is and will remain ignorant.' " *Matter of Neitlich*, 413 Mass. 416, 423 (1992).

Such limits upon advocacy are essential to preserve the adversary system itself, since it is a process in which the courts are almost wholly dependent on counsel to marshal and proffer the true facts and the accurate applicable law, so that correct conclusions that most closely approximate justice will emerge from the crucible of contending presentations.

*Judgments affirmed.*