COMMONWEALTH *vs.* DENNIS DIETRICH.

Essex.   May 7, 1980. — September 4, 1980.

Present: HENNESSEY, C.J., KAPLAN, WILKINS, LIACOS, & ABRAMS, JJ.

*Constitutional Law,* Waiver of constitutional rights. *Waiver. Practice, Criminal,* Waiver of jury trial, Mistrial, Nolle prosequi. *Identification.*

A defendant's waiver of his right to trial by jury in reliance on the weakness of the Commonwealth's case against him was not vitiated when a codefendant struck a deal with the Commonwealth during the trial and subsequently testified against the defendant. [460-462]

There was no merit to a defendant's claim that the judge's conduct in acquitting a codefendant after trial had commenced rather than letting the Commonwealth enter a nolle prosequi, and his questioning of witnesses, reflected a lack of impartiality; nor was there merit to his contention that the judge was required to declare a mistrial on his own motion after the codefendant had begun to testify for the Commonwealth. [462-463]

At a criminal trial, there was sufficient evidence to warrant a finding that a pretrial photographic identification procedure was not unnecessarily suggestive. [463-464]

INDICTMENTS found and returned in the Superior Court on September 14, 1972.

The cases were heard by *Bennett,* J., and a motion for a new trial was heard by him.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Matthew H. Feinberg (Mary C. Leonard* with him) for the defendant.

*Lila Heideman,* Assistant District Attorney, for the Commonwealth.

ABRAMS, J.   The defendant was convicted of robbery and mayhem in a jury waived trial in the Superior Court in

1973.[1]   A motion for a new trial was denied by the trial judge
without a hearing in 1978.   The defendant was allowed to
file a late notice of appeal under G.L. c. 278, §§ 33A-33H,
from both his convictions and the denial of his motion for a
new trial, and the two appeals were consolidated.

The facts of the case are related in *Commonwealth* v.
*Michel,* 367 Mass. 454 (1975), in which we affirmed the
conviction of a codefendant, Larry Michel.[2]   On March 19,
1972, William Cole was the victim of a brutal beating and
robbery.   Cole's testimony indicated that he met Michel at a
bar around noon, and spent the afternoon with Michel and
various other people bar-hopping.   Around 5 P.M., Michel
and three other men drove Cole to a deserted spot where he
was robbed and beaten.   Cole was found by the police later
that evening and brought to a hospital.

The defendant was indicted for robbery and mayhem of
Cole along with three codefendants.   January 23, 1973, at
the commencement of trial, all four defendants filed writ-
ten waivers of their right to trial by jury.[3]   According to af-
fidavits filed in support of the defendant's motion for a new
trial, all four defense counsel recommended this strategy to
their clients in the belief that the evidence was insufficient
as a matter of law, and that a trial judge would be more in-
clined to grant a motion for a directed verdict when no jury
had been impanelled and sworn.

During the trial, Cole did not identify the defendant as
one of his assailants.   There was testimony, however, that
the day after the incident Cole picked three pictures out of
an array of photographs; one of the photographs was that of
the defendant.[4]   The only testimony at trial involving the

---

[1] The defendant was sentenced to fifteen to fifty years at the Massachu-
setts Correctional Institution at Walpole on the robbery conviction, with
a concurrent term of fifteen to twenty years for mayhem.

[2] See also *Commonwealth* v. *Michel, ante* 447 (1980).

[3] See G. L. c. 263, § 6; Mass. R. Crim. P. 19 (a), 378 Mass. 888 (1979).

[4] It was unclear whether Cole identified photographs of the Dietrich
brothers and Michel as his assailants or simply as his companions on the
day of the beating.   The Commonwealth acknowledges that this testi-
mony is ambiguous.

defendant in Cole's assault came from Walter D. Coyne, III. Coyne was originally indicted for these offenses, but was acquitted by the judge after he objected to the Commonwealth's motion to enter a nolle prosequi on the charges against him during trial. Coyne's testimony at trial was consistent with a statement he had given to the police within two weeks of the incident. Coyne inculpated his codefendants and exculpated himself.

On appeal Dietrich argues that his waiver of jury trial was not knowing and intelligent since it was based on a mistaken evaluation of the strength of the Commonwealth's case against him because of Coyne's appearance at trial as a prosecution witness. He further claims reversible error in the trial judge's failure to declare a mistrial on his own motion when Coyne began to testify for the Commonwealth. Finally, he claims that the identification procedures involved in this case were so impermissibly suggestive that their subsequent use at trial was a due process violation. We find no merit in any of these contentions and affirm the judgments.

*Waiver of jury trial.* Since the defendant did not challenge the validity of his jury waiver until he filed a motion for new trial, we review the record to see whether there is a "substantial risk of a miscarriage of justice." *Commonwealth* v. *Freeman,* 352 Mass. 556, 563-564 (1967). See *Earl* v. *Commonwealth,* 356 Mass. 181, 184 (1969).

The right to a jury trial is a fundamental right guaranteed to a criminal defendant in order to preserve a fair trial. A defendant may waive that right only if he does so knowingly and intelligently. *Schneckloth* v. *Bustamonte,* 412 U.S. 218, 237-238 (1973). *Adams* v. *United States ex rel. McCann,* 317 U.S. 269, 275 (1942). *Johnson* v. *Zerbst,* 304 U.S. 458, 464 (1938). "[W]hether or not there is an intelligent, competent, self-protecting waiver of jury trial by an accused must depend on the unique circumstances of each case." *Adams* v. *United States ex rel. McCann, supra* at 278.

The defendant does not claim that he misunderstood the scope and impact of this precious constitutional right. See *Ciummei* v. *Commonwealth,* 378 Mass. 504, 508-509

(1979); *United States* v. *Conforte,* 457 F. Supp. 641, 660 (D. Nev. 1978), aff'd 624 F.2d 869 (9th Cir. 1980); *Commonwealth* v. *Morin,* 477 Pa. 80, 85 (1978). Nor does he claim that any mental or physical incapacity affected his ability to understand the consequences of his choice. See, e.g., *United States* v. *David,* 511 F.2d 355 (D.C. Cir. 1975). See also *Commonwealth* v. *Robinson,* 295 Mass. 471, 473 (1936). Rather, Dietrich claims that he waived his right to a jury trial in reliance on the weakness of the government's case against him and therefore his waiver was vitiated when the government's case became stronger by reason of Coyne's testimony. See *People* v. *Redwine,* 166 Cal. App. 2d 371 (1958).[5]

Dietrich argues that "it [was] perfectly clear to the Commonwealth prior to trial that it [would] be necessary to 'make a deal' with one of the defendants in order to secure convictions." If it was perfectly clear to the Commonwealth, however, it was equally clear to the defendant. The defendant knew that shortly after the incident Coyne had given the police a statement inculpating all three of his codefendants and exculpating himself. Therefore, the probability that Coyne might strike a deal and decide to testify for the Commonwealth was an obvious consideration in deciding whether to waive a jury.

The decision whether or not to waive the right to trial by jury is primarily "a decision regarding trial strategy." *Ciummei* v. *Commonwealth, supra* at 508 n.7. "In the end, the defendant must make an over-all estimate as to where he will fare better, before a judge or before a jury. If he goes to trial, he will presumably prefer to go to trial in the

---

[5] In *People* v. *Redwine,* 166 Cal. App. 2d 371 (1958), the defendant in an assault case waived his right to a jury trial subject to his right further to cross-examine the two complaining witnesses. When one of the witnesses became unavailable at trial, it was held error for the trial judge to deny the defendant's motion to be relieved of his waiver of jury trial. In *Redwine,* however, the limitation on the waiver of jury clearly was set forth and the expected testimony which was unavailable was favorable to the defense. The confrontation rights may have been abridged by the failure of the witness to appear at trial.

forum where he thinks his chances will be best." H. Kalven & H. Zeisel, The American Jury, 28 (1966). The defendant will not be relieved of the consequences of his tactical decision where the circumstances which are said to warrant relief were clearly foreseeable at the time of the waiver. See *United States* v. *Conforte,* 624 F.2d 869 (9th Cir. 1980); *Wyatt* v. *United States,* 591 F.2d 260 (4th Cir. 1979); *United States* v. *Colacurcio,* 499 F.2d 1401 (9th Cir. 1974); *United States* v. *Sadrzadeh,* 440 F.2d 389 (9th Cir. 1971).

The defendant also asserts that he relied on advice from Anthony DiFruscia, attorney for codefendant Michel, in deciding whether to waive his right to trial by jury. Since Michel's attorney had conflicting allegiances, see *Commonwealth* v. *Michel, ante* 447 (1980), Dietrich claims his waiver was somehow thereby tainted. The short answer is that the defendant had the benefit of independent counsel in making his tactical decision and cannot prosper by bootstrapping Michel's claim. We give considerable deference to tactical determinations made with the advice of independent counsel. See *Commonwealth* v. *Michel, supra* at 454 n.9.

*Mistrial.* The defendant did not move for a mistrial at any point in the proceedings below, nor did he ever request permission to withdraw his waiver of a jury trial. In this court, he argues that the judge had an obligation to declare a mistrial on his own motion. In the absence of circumstances which would justify voiding the defendant's waiver of jury trial, we do not think the judge had an obligation, or indeed the right, to declare a mistrial when Coyne began to testify for the Commonwealth.

The defendant asserts that the judge's conduct in acquitting Coyne rather than letting the Commonwealth enter a nolle prosequi amounted to an exercise of the prosecutorial function which seriously impinged on the necessary impartiality of the trial judge. This argument is without merit. The defendant's argument fails to consider fully the fact that jeopardy attaches when the defendant is put on trial. *Commonwealth* v. *Clemmons,* 370 Mass. 288, 292 (1976),

and cases cited. Thereafter, the ability of the judge to declare a mistrial is limited by considerations of jeopardy. See *Jones* v. *Commonwealth,* 379 Mass. 607 (1980). For much the same reason, the district attorney's power to enter a nolle prosequi is also severely curtailed after the trial has commenced. After that "the defendant acquires a right to have that tribunal pass upon his guilt by verdict and thus secure a bar to another prosecution for the same offence. *That right of the defendant will be protected by the court.* . . . A nolle prosequi without the consent of the defendant after the trial has commenced and before verdict has the effect of acquittal" (emphasis added). See *Commonwealth* v. *Dascalakis,* 246 Mass. 12, 18-19 (1923). See *Commonwealth* v. *Hart,* 149 Mass. 7, 9 (1889). Thus the judge did not err in acquitting Coyne rather than letting the Commonwealth enter the nolle prosequi.

Finally, as to the questions asked by the judge, "[i]t would add little to our jurisprudence to discuss in detail the defendant's attacks on the judge's questioning of witnesses," *Commonwealth* v. *Hanscomb,* 367 Mass. 726, 730 (1975), because neither the number nor the nature of his questions reflects bias or an overzealous attitude. See *Commonwealth* v. *Campbell,* 371 Mass. 40, 45 (1976).

*Identification.* Evidence of Cole's out-of-court identification of the defendant's photograph was admitted over his objection and exception at trial. See note 4, *supra.* The defendant now argues that the photographic identification procedure employed by the Commonwealth "was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons* v. *United States,* 390 U.S. 377, 384 (1968).

The defendant's objections focus on the size of the array, whether Cole was physically and mentally competent to make an identification, and whether the officer's comments were overly suggestive. In evaluating whether a given identification procedure is unnecessarily suggestive, we consider "the totality of the circumstances surrounding it." *Commonwealth* v. *Botelho,* 369 Mass. 860, 867 (1976), quoting from *Stovall* v. *Denno,* 388 U.S. 293, 302 (1967).

An array of ten photographs is not as a matter of constitutional law too small. Further, the fact that three of the ten photographs were those of the three defendants (Michel and the two Dietrichs) does not, without more, render the array an unfair sample. See *Commonwealth* v. *Cincotta,* 379 Mass. 391, 393-394 (1979); *Commonwealth* v. *Jones,* 9 Mass. App. Ct. 83, 88-89 (1980). As to the objection that Cole was in no condition to make a photographic identification and that an officer made remarks which were unduly suggestive, there was contradictory evidence at trial as to Cole's condition and as to the police officer's remarks, if any. Resolution of conflicting testimony is for the factfinder. Thus "[a]ny weaknesses in the photographic identification process, such as may have been disclosed during the [trial], did not rise to constitutional level and therefore were properly left for consideration by the [fact-finder] relevant to the weight of the identifications." *Commonwealth* v. *Jones,* 375 Mass. 349, 355 (1978).

*Judgments affirmed.*