COMMONWEALTH vs. EUGENE R. CONNOR & another.[1]

Middlesex.   September 14, 1982. — October 7, 1982.

Present: GREANEY, PERRETTA, [ KASS, JJ.

*Practice, Criminal,* Waiver of trial by jury.  *Constitutional Law,* Waiver
    of constitutional rights, Trial by jury.  Waiver.

Before accepting a criminal defendant's withdrawal of his appeal to the
    jury session of a District Court following his conviction at a bench
    trial, a judge must ascertain whether the withdrawal of the appeal
    was made intelligently and voluntarily.  [490-492]

COMPLAINTS received and sworn to in the Lowell Division
of the District Court Department on December 24, 1979.

The cases were heard by *Kiernan,* J., and a motion to va-
cate judgments and reinstate the defendants' appeals to the
jury session was heard by him.

*Andrew Good (John J. Barter* with him) for the defendants.

*Carmel A. J. Motherway,* Assistant District Attorney, for
the Commonwealth.

KASS, J.  We are asked to consider whether acceptance of
a written withdrawal of an appeal to a jury of six session in a
District Court must be accompanied by a colloquy between
the judge and the defendant to ascertain if, in withdrawing
his appeal, the defendant acted voluntarily and with under-
standing.  We conclude that such a colloquy is required.

On December 21, 1979, Connor Construction Company,
Inc. (the company), of which the defendant Eugene R.
Connor was president, held Christmas revels during which
the peaceful sentiments of the season apparently became
submerged.  Before the party was over, Eugene Connor, his
son, his brother and four employees of the company were

---

[1] Michael P. Connor.

arrested on charges of being disorderly persons and of assault and battery upon a police officer. At their arraignment in the District Court of Lowell on December 24, 1979, all seven men were represented by the company's corporate counsel, who advised that they enter pleas of not guilty, waive their rights to an initial jury trial, and admit to sufficient facts to be found guilty of the offenses charged. They did so.

Each defendant was found guilty, and the judge imposed fines aggregating $550 per defendant. The defendants promptly appealed to a jury of six session, conformably with G. L. c. 278, § 18, as appearing in St. 1978, c. 478, § 302.

On the advice of the company's corporate counsel, the defendants retained a lawyer who specialized in criminal cases, Thomas Shapiro, whose office is in Boston. Eugene Connor thought local counsel would be helpful and brought into the picture a lawyer from Tewksbury, Kevin Sullivan, who, as the appellants' brief put it, "was familiar with the Lowell Court." Mr. Sullivan was to file an appearance in the cases and to address the court on behalf of the defendants, while Mr. Shapiro played a monitoring and advisory role. It was Mr. Sullivan's object to vacate the finding of guilty, to have the cases continued for one year without a finding, and to have the fines reclassified as court costs.

Defendants were next scheduled to appear in court on January 16, 1980. Before the lunch recess on that day Mr. Sullivan thought he had reached agreement with the prosecution that it would recommend the terms he desired and so reported to Mr. Shapiro, who relayed the good news to the defendants. After arranging for the preparation of written withdrawals of the appeals with the clerk, Mr. Shapiro went serenely to lunch with the defendants.

Upon their return to court shortly before 2:00 P.M., the defendants learned from Mr. Sullivan that the understanding had become unglued: the police prosecutor would not join in the desired recommendation. Mr. Sullivan urged the defendants to withdraw their appeals despite the change in circumstances. Necessarily hasty consultation with Mr. Shapiro ensued but this was interrupted by a summons into

the courtroom. There, in open court, before the same judge who had presided at the initial proceeding, the defendants each signed withdrawals of their appeals to the jury of six session.[2] Once that formality was completed, Mr. Sullivan made a plea for a disposition which would avoid a record, an action which, as will appear below, was not within the power of the judge. Mr. Sullivan was unsuccessful, and the judge announced at once that the sentences he had originally imposed remained in force. The judge did not address the defendants except to ask about the length of time they would need to pay their fines.

On January 21, 1980, Eugene and Michael Connor each filed a motion to vacate the judgments and to reinstate the appeals on the ground that "Defendant signed a written withdrawal of appeal without knowingly, voluntarily, and deliberately waiving his right to a jury trial in these matters." After a hearing at which Eugene Connor, Michael Connor and Mr. Shapiro testified, the judge denied the motion from the bench. He did so without findings of fact, but indicated by comments that he took into account the defendants' initial admission to sufficient facts and that, in consequence, the defendants' argument was about disposition, rather than guilt. The judge also observed that three lawyers had advised the defendants at various stages and deduced, therefore, that they had not gone through the process uncounselled. From the denial of their motion, the defendants have appealed.

When the defendants came before him in the jury of six session, the District Court judge did not have the benefit of the opinion in *Commonwealth* v. *Duquette*, 386 Mass. 834 (1982). There the court observed that the device of admitting to sufficient facts is primarily used to expedite a de novo jury trial at the second tier of District Court proceedings. *Id.* at 838. See also Smith, Criminal Practice and Procedure

---

[2] We assume that, had the appeal not been withdrawn, the judge who heard the case at the first tier would have recused himself and a different judge would have presided at the jury of six trial.

§ 759 (Supp. 1979). To admit to sufficient facts at the first tier is not inconsistent with a plea of not guilty; the prosecution must still prove guilt beyond a reasonable doubt, but a minimal amount of evidence is adequate and hearsay is admissible. See Standards for Trials and Probable Cause Hearings of the District Court Department § 2:01 and commentary thereto (1981). See also Mass.R.Crim.P. 12(a)(3), 378 Mass. 866 (1979), which expressly provides for admission to sufficient facts after a plea of not guilty. In *Duquette* (at 841) the defendant also admitted to sufficient facts at the jury of six session, the second tier, and that admission was tantamount to a plea of guilty. There lay the flaw. By in effect pleading guilty, the defendant in *Duquette* gave up his last opportunity for a jury trial and the resulting judgment of conviction had a finality that a first-tier judgment did not have. Accordingly, it was necessary for the judge to hold the colloquy with the defendant required by *Ciummei* v. *Commonwealth,* 378 Mass. 504, 509-510 (1979), and applicable to District Courts under *Costarelli, petitioner,* 378 Mass. 516, 518-519 (1979).

Withdrawal of an appeal in the jury of six session has the same elements of lost opportunity for a jury trial and resultant finality. The effect of a withdrawal of an appeal from the jury of six session of a District Court is to waive the right to a trial by jury. That was the right waived in *Ciummei* v. *Commonwealth, supra,* and *Costarelli, petitioner, supra.* The court in those cases, while recognizing that waiver of a jury had not as much weight or consequence as a guilty plea, required nonetheless that a judge hold a brief colloquy with a defendant who waives a jury trial so that the judge may satisfy himself that the waivers are voluntary and intelligent. *Ciummei* v. *Commonwealth,* 378 Mass. at 508-510. Among the things a judge may wish to state in the case of a withdrawal of an appeal in the District Court, in addition to those set out in *Ciummei,* at 510,[3] is that the withdrawal

---

[3] Those included: that the defendant may participate in the selection of the jury; that the verdict of the jury must be unanimous; that the jury decide guilt or innocence while the judge makes rulings of law in the course

of appeal causes the judgment of conviction to be final. That this is important information is illustrated by the case at bar, in which the whole point of the second tier proceeding was to eradicate the finding of guilty made at the first tier, an objective that was foreclosed as soon as the appeals were withdrawn. All that was left to the judge upon withdrawal of the appeals was revision or revocation of the sentences,[4] a matter of secondary interest to those defendants who have appealed. When the appeal is one from a conviction founded on an admission to sufficient facts and, therefore, an uncontested prosecution case, it would be appropriate for the judge to add that in a trial, the defendant may confront his accusers. Cf. *McCarthy* v. *United States,* 394 U.S. 459, 466 (1969). See Mass.R.Crim.P. 12(c)(3)(A), 378 Mass. 868 (1979). Contrast *Commonwealth* v. *Dietrich,* 381 Mass. 458 (1980).

The judgments are reversed, and the findings of guilty are set aside. The cases are remanded to the jury of six session of the District Court for trial.

*So ordered.*

---

of the trial, instructs the jury on the law, and imposes sentence in case of guilt; and that, where a jury is waived, the judge also decides guilt or innocence in accordance with the facts and the law.

[4] Had the judge at the second tier been other than the judge who sat at the first tier, he would have lacked power to revise and revoke the original sentence, and would have been bound to order the defendants to comply with the original sentence or to reschedule the matter so that it would come before the judge who imposed the original sentence. See Standards for Trials and Probable Cause Hearings of the District Court Department, *supra* § 2:04.