Lowy, J.
BACKGROUND
The defendant Sean Janosky is charged in various indictments arising out of an alleged armed robbery of a jewelry store in Peabody. The owners of the jewelry store, Ron Paul and Talya Paul were able to make out-of-court identifications of the defendant. Mr. Paul made an identification on January 3, 2000 and again on March 10, 2000. Mrs. Paul made an out-of-court identification on February 15, 2000. The defendant now moves to suppress the out-of-court identification procedures utilized by the Peabody Police Department on the grounds that the identification procedures were unnecessarily suggestive. The matter came before the Court for an evidentiary hearing on August 28, 2001. Based upon the findings of fact and conclusions of law discussed below, the defendant’s motion is DENIED.
FINDINGS OF FACT
On December 18, 1999, Peabody Police Detective Richard Keith and other officers responded to a dispatch concerning a robbery of a jewelry store in the vicinity of the North Shore Mall in Peabody. On January 3, 2000, Mr. and Mrs. Paul were separately shown photo arrays at the Peabody Police Station. The Peabody Police had obtained a copy of the defendant’s photograph from the Registry of Motor Vehicles earlier that day. The Peabody Police also obtained nine additional computer generated photographs from the Boston Police Department. The Boston Police generated the nine photographs by inputting the defendant’s description into a computer program. Detective Keith then redacted from the photographs identifying information such as the name and nature of the charge for which the person depicted in each photograph had been booked. As a result of removing the identifying information from each of the black and white photographs and making the copies of each photograph similar in size, nothing about any one particular photograph was particularly distinctive from the others.
Before Mr. Paul viewed the array, Detective Keith and Detective Robert Russell instructed him that the series of photographs may or may not have anything to do with the investigation and to examine the photographs to determine if he recognized anyone. Detective Russell placed the photographs face down in two rows of five, one row on top of the other. Detective Russell instructed Mr. Paul to wait until all the photographs were turned over before making an .identification. [1]
Detective Russell turned the photographs over one at a time pausing for one or two seconds before turning over the next photograph. As soon as Detective Russell turned over photograph number five, Mr. Paul immediately made an identification indicating that the person depicted in the fifth photograph was the individual who shot at him. Detective Russell told Mr. Paul to relax and continue to view the remaining photographs but Mr. Paul refused to examine the remaining five photographs.
Mrs. Paul viewed the same array on January 3, 2000, but she was unable to make an identification. Mrs. Paul indicated that she only had a short time to see the perpetrator on the night of the incident and that she had difficulty making an identification from black and white photographs.
The defendant was arrested on January 5, 2000, by the Peabody Police. On February 15, 2000, Mrs. Paul was shown another photo array in her office at the jewelry store. This second array consisted of eight booking photographs in color. The booking photographs came from the files of the Peabody Police Department. The only repeated photograph in the February 15, 2000 array from the January 3, 2000 array was that of the defendant. Mrs. Paul was given the same instructions she received on January 3, *551 2000. This time, however, all the photographs were placed face up before the identification procedure commenced. Mrs. Paul identified the defendant’s photograph as the perpetrator.
On March 10, 2000, a line-up was conducted at the Essex County House of Correction. The defendant was placed in a line-up consisting of seven people. Other than the defendant, none of the individuals who were depicted in the January 3, 2000 or February 15, 2000 array were in the live line-up. Once again, Mr. and Mrs. Paul viewed the line-up separately. Mr. Paul was able to make an identification. Mrs. Paul identified an individual other than the defendant.
RULINGS OF LAW
I. Standard of Review
A defendant moving to suppress an out-of-court identification procedure, has the burden of proving by a preponderance of the evidence that the witness making an identification was subject to a confrontation that was unnecessarily suggestive and thus offensive to due process. See Commonwealth v. Johnson, 420 Mass. 458, 463 (1995). In deciding whether an out-of-court identification procedure is unnecessarily suggestive, the motion judge considers the totality of the circumstances surrounding the procedure. Id. at 464. If the defendant meets its burden, the Commonwealth must prove by clear and convincing evidence that any in-court identification would have a source independent of the unnecessarily suggestive confrontation. Commonwealth v. Botelho, 369 Mass. 860, 868 (1976).[2] The procedure may not be “so impermissibly suggestive as to give rise to a substantial likelihood of irreparable misidentification.” Commonwealth v. Thornley, 406 Mass. 96, 98 (1989).
II. January 3, 2000 Photographic Array as to Mr. Paul
The procedure utilized by the Peabody Police on January 3, 2000 did not raise a substantial risk of misidentification. Indeed, Mr. Paul was evidently so certain of his identification of the defendant that he was unable to follow Detective Russell’s instructions to wait until all the photographs were turned over before making an identification. The identification procedure contemplated by the police would have resulted in an array of ten photographs, none of which was.distinctive from the others. An identification procedure does not become unconstitutional simply because of an emphatic identification by an alleged victim prior to completion of the identification procedure.
Even if one were to argue that the Peabody Police should bear the responsibility of a premature identification because all the photographs were not face up before an identification was attempted, Mr. Paul’s identification of the defendant would still not be unnecessarily suggestive. Mr. Paul selected the defendant after viewing four other photographs that were turned over one by one. In Commonwealth v. Allen, 22 Mass.App.Ct. 413, 417 (1986), the court held that an array of five photographs was not by itself unnecessarily suggestive.[3] See also Commonwealth v. Dietrich, 381 Mass. 458, 464 (1980) (holding that a photo array of ten photographs, three of which were of the three suspects, was not unnecessarily suggestive). Nonetheless, Mr. Paul was not presented with an array of only five photographs. Rather, due to the his certainty as to his identification of the defendant, he was unwilling to wait for Detective Russell to complete the array. The totality of the circumstances suggest that the procedure was constitutional.[4] While reliability is not a factor in determining the constitutionality of out-of-court identification procedures under the Declaration of Rights, an otherwise constitutional procedure is not made unconstitutional because perhaps Mr. Paul’s personality is such that he could not refrain from making his identification until four more superfluous photographs were revealed.[5]
III. February 15, 2000 Photographic Identification by Mrs. Paul
A. Mere repetition of defendant in’ multiple photo arrays is not, by itself, unnecessarily suggestive.
The procedure utilized by the Peabody Police on February 15, 2000, did not raise a substantial risk of misidentification. While the Supreme Judicial Court has recognized that repetition of one individual in different photo arrays will increase the likelihood of misidentification, it has declined to “adopt a per se exclusionary rule condemning as constitutionally infirm all subsequent identifications of a defendant by any witness who had previously failed to select the defendant . . .” Commonwealth v. Lacy, 371 Mass. 363, 369 (1976); see Commonwealth v. Paszko, 391 Mass. 164, 169 (1984). Rather, “duplication of a defendant’s photograph in one or more arrays has not been held sufficient by itself to compel exclusion of a resulting identification.” Paszko, 391 Mass. at 169; Commonwealth v. Wallace, 417 Mass. 126, 129 (1994); Commonwealth v. Kostka, 370 Mass. 516, 524 (1976); Commonwealth v. Awad, 47 Mass.App.Ct. 139, 147 (1999); Commonwealth v. LaPierre, 10 Mass.App.Ct. 641, 644 (1980); cf. Commonwealth v. LaFaille, 430 Mass. 44, 48 (1999) (holding that inadvertent duplication of defendant resulting in two photographs of him in the same array was not sufficient to compel exclusion).
Mere repetition, though susceptible to criticism, is not unnecessarily suggestive and cannot alone justify exclusion of an identification. Commonwealth v. Scott, 408 Mass. 811, 826 (1990); Paszko, 391 Mass. at 171. Despite the increased probability of misidentification created by the Peabody Police identification procedure, the procedure is not unnecessarily suggestive. See Scott, 408 Mass. at 825-26; see Paszko, 391 Mass. at 169. Mrs. Paul’s comments on January 3, 2000, *552 indicating a preference for color photographs and even an inability to identify an individual from a black and white photo array, may have reasonably prompted the police to create a color array for the second identification procedure. The danger of misidentification is further diminished by Mrs. Paul’s failure to identify defendant at the March 10, 2000 line-up, as indication that she was not willing to select an individual simply because she had seen his photograph at a previous identification.
B. The utilization of the color photograph at the February 15, 2000 identification is not unnecessarily suggestive.
The initial showing of a black and white photograph in the first photo array, followed by a color version of the photograph in the second array, did not raise a-substantial risk of misidentification. Further, the absence of photographs of the other individuals from the first array also does not compel exclusion. In Commonwealth v. Scott, 408 Mass. at 825-26, the court held that four different photo arrays, the last two arrays each containing a photograph of defendant and the very last array containing a “better" quality and newer picture of defendant, was not impermissibly suggestive to warrant exclusion. The court disagreed with defendant that repeated showings of the arrays to the victim, coupled with the last array containing a new and better photographs of defendant, violated his due process rights under the Fifth and Fourteenth Amendments, or article 12. Id. at 825. Instead, the court held that a new and better photograph of defendant was not unnecessarily suggestive.
In the instant case, the Peabody police procedure of using a color photograph for the second photo array was a fair attempt, similar to Scott, to produce a better quality picture for a second array. While not the preferred identification procedure, the absence of the individuals other than the defendant from the first identification in the second identification was the result of utilization of a different source for obtaining photographs. The Peabody Police had traveled to Boston to obtain the first array. Once the defendant was arrested and in custody, the police were better able to invest the time to utilize their own booking photographs to put together a second array. Perhaps the police should have once again sought the Boston Police Department’s assistance to determine if the Boston Police’s photo-imaging computer program was able to generate color photographs,[6] but the Peabody Police’s failure to do so did not result in an unnecessarily suggestive array.
The Peabody Police procedure of using a color photograph in the second array was an attempt to produce a better photograph than the black and white one used in the first array. Upon viewing the first array, Mrs. Paul stated that she was having difficulty making an identification from the black and white photographs. While not preferred, changing the black and white photograph to a color photograph for the second array was not an unnecessarily suggestive procedure, but rather, a reasonable attempt to improve the quality of the array.[7]
This court notes that where the alleged victim has not made a positive identification in the first array, only repeating defendant in subsequent arrays, is not preferred. Nonetheless, “there was no passing or near passing of the constitutional boundary into fatal suggestiveness.” Paszko, 391 Mass. at 171, citing Commonwealth v. Cincotta, 379 Mass. 391, 397 (1979). Since the identification procedures utilized by the Peabody police were not unnecessarily suggestive, defendant’s motion to suppress the February 15, 2000 photographic identification is denied.
ORDER
For the foregoing reasons, the defendant’s motion to suppress identifications is DENIED.

 The Court recognizes that there exists a conflict between Keith and Russell’s testimony as to whether the photographs were put down one at a time as Keith testified or were put face down in rows of five and then turned over one at a time as Russell testified. The Court does not consider either procedure to be unnecessarily suggestive in and of itself but notes that it credits Russell’s testimony on the matter for four reasons: (1) Russell was the officer holding and placing down the photographs: (2) Keith testified that he could not recall how the photographs were placed down when Mrs. Paul viewed them on January 3, 2000 and his memory is therefore more questionable then Russell’s on the procedure utilized for Mr. Paul; (3) Russell testified that the photographs were placed in front of Mr. Paul m the same manner that they were placed in front of Mrs. Paul; and (4) Russell recalls that after Mrs. Paul failed to make an identification, he turned the photographs back over and placed them in the same order and position as before.

 The Commonwealth and the defendant orally moved that the hearing be bifurcated to accommodate witnesses. The Court allowed the motion and therefore only heard evidence relevant to the constitutionality of the out-of-court identification procedure.

 The court in Allen certainly urged the use of a larger display. Id. at 416-17.

 No evidence was presented suggesting that Mr. Paul’s identification of the defendant at the March 10, 2000 line-up was unnecessarily suggestive. Nonetheless, the Court notes that exact duplication of the first photo array in a subsequent live line-up would be, if not impossible, unlikely to construct. Furthermore, since the Court has held that Mr. Paul's identification of the defendant’s photograph in the January 3, 2000 array was not unnecessarily suggestive, there is no reason to believe that the identification at the subsequent line-up was tainted as the result of an unconstitutional initial identification procedure.

 Mr. Paul’s impatience in making an identification of the person who allegedly robbed him is understandable. That is why the procedure utilized by Detective Russell, while not on these facts unconstitutional, is imprudent.

 There was no evidence presented as to whether the Boston Police Department computer program had the capacity to generate a color photo array similar in all respects to the January 3, 2000 array.

 While Appeals Court Rule 1:28 opinions may not be cited as precedential value, the Court notes that Commonwealth v. Kelly, 2000 WL 1476258 (Mass.App.Ct., 2000) (unpublished *553 disposition pursuant to Appeals Court Rule 1:28), presents very similar facts and reasoning. The court addressed the issue of successive photo arrays, from a black and white photograph in the first, to a color photograph in the second, in which the witness was unable to make an identification until the second array and the defendant was the only individual repeated in the second array. The Appeals Court held that this procedure was not sufficient to compel suppression of the identification.