## COMMONWEALTH *vs.* KALEVI KOPSALA.

No. 01-P-1110.

Middlesex. December 11, 2002. - June 27, 2003.

Present: BROWN, SMITH, & KAFKER, JJ.

*Practice, Criminal,* Trial by jury, Mistrial, Duplicative convictions. *Constitutional Law,* Trial by jury, Waiver of constitutional rights. *Rape. Indecent Assault and Battery.*

A judge did not err in denying a criminal defendant's motion for a mistrial in a case of rape and indecent assault and battery on the ground that, because the defendant's decision to waive a jury trial was in reliance on allegedly exculpatory information in a police crime laboratory report, his waiver was not voluntarily or intelligently made because he was subsequently informed during trial that one of the statements in the report was erroneous, where, upon scrutiny of the report before the defendant's decision to waive the jury was made, it was foreseeable that the error in the report would be discovered [390-392]; further, the judge did not err in denying the motion for a mistrial on the ground that the delayed disclosure of the erroneous text in the report deprived the defendant of an opportunity to effectively investigate the evidence, where a lengthy continuance gave the defendant ample time for further investigation and thus removed any prejudice from late disclosure, if any had been present [392].

This court presumed that a judge sitting without a jury in a criminal case involving rape and indecent assault and battery indictments, absent contrary indication, correctly instructed himself that, in order to find the defendant guilty on both indictments, he had to find that each conviction was based on separate acts. [392-393]

INDICTMENTS found and returned in the Superior Court Department on February 17, 1998, and November 5, 1998, respectively.

The cases were heard by *Ralph D. Gants,* J.

*Stella Robinson* for the defendant.

*Kevin J. Curtin,* Assistant District Attorney, for the Commonwealth.

SMITH, J. The defendant was convicted by a judge, sitting without a jury, of rape and indecent assault and battery on a person fourteen years of age or older.

On appeal, the defendant claims that the judge committed error in denying his motion for a mistrial based on misinformation furnished to the defendant by the Commonwealth prior to his trial. He also claims that the acts of rape and indecent assault and battery were so closely related in fact that they constituted a single crime, and supported only a single conviction and sentence.

*Facts.* We outline the evidence introduced by the Commonwealth, reserving certain details to be discussed in conjunction with the issues raised.

The victim was one of the defendant's adult daughters. In November of 1996, the defendant, who was separated from the victim's mother, lived in Ashby with his son, David. On November 23, the victim was having problems with her live-in ex-husband, and went to the defendant's home, hoping that he would allow her to stay there.

The defendant was not home when she arrived. The victim drank some blackberry brandy with a couple who lived in the upstairs bedroom. The defendant arrived home in the early evening, and she continued drinking blackberry brandy with him. Sometime during the evening, the victim passed out.

Meanwhile, the victim's mother and aunt met David at a bar. After about an hour of socializing, the mother agreed to drive David home. Upon arriving at the defendant's home, they recognized the victim's car and entered the house looking for her. After searching the upstairs bedrooms to no avail, the mother went to the defendant's downstairs bedroom. The door was locked but the mother finally was able to push the door open.

Upon entering the bedroom she found the defendant standing by the door, with a blanket wrapped tightly around him. The victim was unconscious and lying on her back on a bed with her shirt pulled up, exposing her breasts. Her jeans were around her ankles.

The mother and the defendant then engaged in a shouting match, which drew the attention of David and the aunt. They entered the room and David, seeing his sister half-naked on the defendant's bed, became angry and also shouted at the defendant. The aunt called the police. The victim regained

consciousness but had no memory of what had occurred after she passed out.

After the police arrived, the mother and aunt took the victim to the hospital, where she discovered that her underpants had been removed. A rape kit protocol was undertaken and, after completion, was turned over to State Trooper Burke. The trooper also took custody of the victim's jeans. Both the rape kit and jeans were sent to the State police crime laboratory for examination.

On November 24, the defendant was interviewed at his home by Trooper Burke and other police officers. The defendant gave several versions of his activities in relation to the victim. In the final version, he claimed that the victim rubbed his groin and kissed him a few times. He helped her to his room and onto his bed. The defendant stated that with the victim's assistance, he pulled off her pants, panties, sneakers, and socks. He was drunk and unable to have an erection. The victim passed out, the defendant heard voices in the house, and then he started to put the victim's pants back on when the victim's mother came through the door. The defendant could not recall at what time he locked the bedroom door. The defendant consented to a search of the house, and the victim's panties were found in a hamper.

On the second day of trial, a supervisor from the State police crime laboratory evidence unit testified concerning the results of the tests that the laboratory had performed on the victim's jeans and on the vaginal and external genital swabs. The supervisor testified that, based on her training and experience and the test results, the defendant could not be excluded as a possible source of the seminal fluids found on the vaginal swabs because the quantity was not sufficient for interpretation.

The prosecutor called the supervisor's attention to her report, which had been given to the prosecutor and defense counsel prior to trial. The report stated that the defendant "can" be excluded as a source of the seminal fluid found on the vaginal swabs. The supervisor testified that the word "can" was a typographical error and the word "cannot" was the correct word, as she had testified. The supervisor further testified that the correct result, i.e., that the defendant "cannot" be excluded,

was included in the table of results in the report. She also stated that she discovered the error the morning of the day she testified.

The defendant moved for a mistrial. He argued that his tactical decision to waive the jury was based upon the "rather unsavory allegations in [the] case" and the apparent exculpatory nature of the test results as shown in the report. Thus, he claimed his jury waiver was involuntary and not intelligently made. He also contended that he was prejudiced by the late discovery of the error because he was deprived of an opportunity to have an independent expert test the evidence.

The judge denied the defendant's motion for a mistrial. He ruled that (1) neither party was responsible for the delayed discovery of the typographical error; (2) a careful reading of the report would have revealed substantial internal inconsistencies between the report's table of results and the report's conclusion; and (3) the defendant failed to show he was prejudiced by the error in the report.

The next day, the defendant renewed his motion for a mistrial. The judge again denied the motion but, in response to the defendant's claim of prejudice, the judge granted the defendant a three-month continuance to allow the defense to perform forensic tests. Because of scheduling conflicts of the parties, the trial did not resume until nine months later. The defendant again requested a mistrial and the judge denied it for the same reasons he had previously stated. The defendant then rested without presenting any evidence. The judge found the defendant guilty on both indictments.

1. *Denial of the defendant's motion for a mistrial.* a. *Jury waiver.* "The right to a jury trial is a fundamental right guaranteed to a criminal defendant in order to preserve a fair trial." *Commonwealth* v. *Dietrich*, 381 Mass. 458, 460 (1980). A defendant may waive a jury trial provided his decision is made "voluntarily and intelligently." *Ciummei* v. *Commonwealth*, 378 Mass. 504, 509 (1979). A properly conducted colloquy accompanied by a written jury waiver signed by the defendant is sufficient to establish, at least prima facie, that the waiver was both voluntary and intelligent. *Id.* at 508-509.

Here, the defendant does not claim that his decision to waive the jury was involuntary and not intelligently made because the

colloquy was defective or that his written waiver was not properly executed. Rather, he argues that, because his decision to waive the jury was in reliance on the allegedly exculpatory information in the report, his waiver was not voluntarily or intelligently made because he was subsequently informed during the trial that one of the statements in the report was erroneous.

First, a defendant must decide whether he should or should not waive the jury. That decision "is primarily 'a decision regarding trial strategy.' " *Commonwealth* v. *Dietrich, supra* at 461, quoting from *Ciummei* v. *Commonwealth, supra* at 508 n.7. Thus, "[i]n the end, the defendant must make an over-all estimate as to where he will fare better, before a judge or before a jury. If he goes to trial, he will presumably prefer to go to trial in the forum where he thinks his chances will be best." *Commonwealth* v. *Dietrich, supra* at 461-462, quoting from Kalven & Zeisel, The American Jury 28 (1966).

Once the defendant decides to waive the jury, it is the responsibility of the judge to question the defendant to ensure that the defendant has " 'a comprehension of the nature of the choice' between a bench and jury trial." *Commonwealth* v. *Schofield*, 391 Mass. 772, 776 (1984), quoting from *Ciummei* v. *Commonwealth, supra* at 510. It is not the purpose of the colloquy to probe the defendant's understanding of the strength or weakness of the Commonwealth's case or the reasons why the defendant made the tactical decision to waive the jury. Thus, "[c]onfusion and misinformation regarding the [state of the Commonwealth's evidence] does not impair the knowing and intelligent nature of the defendant's waiver of his right to a jury trial, because the two are not related issues." *Commonwealth* v. *Berte*, 57 Mass. App. Ct. 29, 35 (2003).

It has been held that, once a jury trial has been knowingly and intelligently waived, a defendant does not have an absolute right to withdraw or revoke the waiver. *State* v. *Zemunski*, 230 Neb. 613, 618 (1988). Rather, it is within the trial judge's discretion whether a defendant should be permitted to withdraw his waiver. *Ibid.* See *United States* v. *Holmen*, 586 F.2d 322, 323-324 (4th Cir. 1978). Here, there was no abuse of discretion.

According to the defendant, he waived the jury because of

the "unsavory allegations" in the case and the erroneous information in the report. Nothing in the erroneous information changed the "unsavory allegations" in the case and those allegations would remain if there were a new trial.

As to the erroneous information, it has been held that a "defendant will not be relieved of the consequences of his tactical decision [to waive the jury] where the circumstances which are said to warrant relief were clearly foreseeable at the time of the waiver." *Commonwealth* v. *Dietrich,* 381 Mass. at 462.

Here, there were significant internal inconsistencies between the report's table of results and the report's allegedly exculpatory conclusion as to whether the defendant could be excluded as a source of the seminal fluid on the vaginal swabs. In these circumstances, we agree with the trial judge that, upon scrutiny of the report before the defendant's decision to waive the jury was made, it was foreseeable that the error in the report would be discovered.

b. *Prejudice to the defendant as a result of the late disclosure.* The defendant also claims that the judge committed error in denying the defendant's motion for a mistrial because the delayed disclosure of the erroneous text in the report deprived him of an opportunity to effectively investigate the evidence.

The judge granted a continuance to the defendant of three months that stretched to nine months. The lengthy continuance gave the defendant ample time for further investigation and thus removed any prejudice from the late disclosure, if any had been present. See *Commonwealth* v. *Cundriff,* 382 Mass. 137, 150 (1980), cert. denied, 451 U.S. 973 (1981).

We hold that the judge did not commit error in denying the motion for mistrial in regard to either ground asserted as a basis for the motion.

2. *Duplicative convictions.* The defendant claims for the first time on appeal that his convictions for rape and indecent assault and battery were duplicative because they were so closely related in fact that they constituted a single crime.

A defendant can be convicted of rape and indecent assault and battery if the convictions are based on separate conduct. *Commonwealth* v. *Mamay,* 407 Mass. 412, 418 (1990). Here,

after the closing arguments in the case, the trial judge questioned the Commonwealth in regard to its theory of the case concerning the indecent assault and battery indictment. The prosecutor responded that the evidence that the defendant pulled up the victim's shirt, exposing her breasts, unbuttoned her jeans and pulled them off, and removed her panties, all constituted a separate and distinct act from the penetration of the vagina by the defendant. See *Commonwealth* v. *Black*, 50 Mass. App. Ct. 477, 478-479 (2000).

"A trial judge sitting without a jury is presumed, absent contrary indication, to have correctly instructed himself as to the manner in which evidence is to be considered in his role as factfinder." *Commonwealth* v. *Batista*, 53 Mass. App. Ct. 642, 648 (2002). We are sure the judge instructed himself that, in order to find the defendant guilty on both indictments, the judge had to find that each conviction was based on separate acts. Contrast *Commonwealth* v. *Sanchez*, 405 Mass. 369, 381-382 (1989) (indecent assault and battery convictions reversed because, among other things, judge failed to instruct jury that convictions must be based on acts separate from those underlying rape conviction).

We reject the defendant's argument that the judge committed error where, as trier of fact, he convicted and sentenced the defendant on the indecent assault and battery charge.

*Judgments affirmed.*