NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-112

COMMONWEALTH

vs.

JAMES J., a juvenile.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a jury-waived trial, the juvenile was adjudicated delinquent for three counts of aggravated rape, two counts of assault and battery by means of a dangerous weapon, and two counts of assault and battery.  On appeal, the juvenile raises a variety of issues, none of which merit relief, and we affirm.

1.  First complaint rule.  The juvenile claims that in several instances, reports of the victim's assault were admitted in evidence in violation of the first complaint rule.  See Commonwealth v. King, 445 Mass. 217, 242-243 (2005), cert. denied, 546 U.S. 1216 (2006).  These reports include the testimony of a Home Depot employee and a Massachusetts Constable Officer that a Home Depot manager told them there had been a rape or assault; the Massachusetts Constable Officer's testimony that he became aware of a sexual assault over the scanner; the

Boston police report of a rape to the sexual assault unit; and the victim's report of the incident to Sergeant Coughlin and to the Sexual Assault Nurse Examiner (SANE) nurse.  On no occasion relative to this testimony did the juvenile lodge an objection. In this posture, we review for error and, if any, whether that error created a substantial risk of a miscarriage of justice. See Commonwealth v. Coutu, 88 Mass. App. Ct. 686, 697 (2015).

Pursuant to the first complaint rule, a sexual assault victim may not "testify to the fact that she 'told' others, apart from the first complaint witness, about the sexual assault, even where the details of the conversation have been omitted."  Commonwealth v. Aviles, 461 Mass. 60, 68 (2011).  See Commonwealth v. Arana, 453 Mass. 214, 223 (2009).  Here, the testimony of the Massachusetts Constable Officer and Home Depot employee was not first complaint testimony because neither of them were testifying as to what the victim had reported. Rather, they were percipient witnesses describing the circumstances immediately following the assault.  Not only was the testimony not detailed, but it was also vague and did not mention the juvenile or the victim.  In this light, it served no function in bolstering the victim's credibility.

The evidence of the Boston Police report of a rape to the sexual assault unit was also not first complaint testimony. This report did not state what the victim reported, and it did

2

not even refer to her.  This evidence was admissible to explain the process of how the sexual assault unit becomes involved in a sexual assault investigation, which is a legitimate purpose other than corroborating the victim's account.  See Arana, 453 Mass. at 226-227.

Finally, the victim's report to Sergeant Coughlin and to the SANE nurse was also not first complaint testimony.  The victim reported how the juvenile held a knife to her throat, but she did not refence the rape.  Moreover, this testimony occurred on cross-examination during defense counsel's effort to challenge the victim's credibility.  However, the SANE report although admissible under G. L. c. 233, § 79, should have been redacted to exclude any notations of "sexual assault," which are conclusions concerning charged crimes.  See Commonwealth v. Dargon, 457 Mass. 387, 394-395 (2010).  Despite this, there was no substantial risk of a miscarriage of justice.  This case was tried jury-waived before a very experienced judge, who not only is presumed to have instructed himself properly on the law, but also would not have been led evidentially astray by a SANE report in a rape case.[1]  See Commonwealth v. Batista, 53 Mass. App. Ct. 642, 648 (2002).

---

[1] The juvenile's claim that several witnesses improperly testified regarding their belief in the victim's allegations is also without merit.  Again, most of the complained of evidence was generated from the individuals who testified to what they

3

2.  Toilet paper dispenser footprint.  The juvenile also claims that Sergeant Coughlin gave an improper lay opinion regarding the juvenile standing on the toilet paper dispenser in the bathroom stall, looking for the victim, and by describing the juvenile as "stalking" in the surveillance video.  We disagree.

A lay opinion is admissible if it is "(a) rationally based on the perception of the witness; (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge [quotation omitted]."  Commonwealth v. Canty, 466 Mass. 535, 541 (2013).  Here, Coughlin made a nonscientific observation that the footprint on the toilet paper dispenser indicated that someone stood on it.  While characterizing the juvenile's behavior in the surveillance video as "stalking" would have been better left unsaid, we conclude that it was meant merely as a summary description of what

_____

observed or heard, including seeing the armed juvenile running from the scene of the rape.  That one of the employees helped the victim escape the bathroom stall does not suggest he believed her account.  Also, Sergeant Coughlin's testimony regarding how a typical sexual assault investigation is conducted was proper.  See Commonwealth v. McCoy, 456 Mass. 838, 847 (2010).  Moreover, his testimony that the police learned there had been an assault properly explained why the crime lab and the SANE nurse became involved in the case.  Finally, the challenged SANE nurse testimony involved general comments on SANE process and protocols, and was not a specific comment on this case.

4

Coughlin saw in the surveillance video.  See Kane v. Fields

Corner Grille, Inc., 341 Mass. 640, 647 (1961).  In any event,

the juvenile was not charged with stalking, it was not an

opinion on the ultimate issue of the crimes with which the

juvenile had been charged, and the trial was conducted jury-

waived.  See Commonwealth v. Cortez, 438 Mass. 123, 128-129

(2002).  We discern no prejudicial error.[2]

3.  Self-defense.  The juvenile next claims that the judge

improperly precluded the juvenile from asserting self-defense to

the charge of assault and battery by means of a dangerous

weapon.  We disagree.

As an initial matter, the juvenile is correct that advance

written notice of self-defense, outside the circumstances

delineated in Commonwealth v. Adjutant, 443 Mass. 649 (2005), is

not required.  See Mass. R. Crim. P. 14 (b) (4), 463 Mass. 1504

---

[2] The juvenile also claims that the evidence of him being
arrested and booked had no relevance and was highly prejudicial
because it suggested that he had committed the sexual assault.
He also claims that his booking form and the booking video and
photographs were improperly admitted in evidence.  Several
witnesses saw the juvenile flee the scene and saw him detained
after a struggle.  The testimony relative to the booking was
generalized and did not specify that the juvenile was arrested
or booked.  None of this placed "the imprimatur of the State on
the decision to arrest or to charge" the juvenile.  Commonwealth
v. DaSilva, 471 Mass. 71, 81 (2015).  In any event, the juvenile
has not established any unfair prejudice.  Indeed, it would have
been of no surprise to the judge sitting as the factfinder to
learn that a juvenile charged with rape and assault and battery
by means of a dangerous weapon would have been arrested and
booked.

5

(2012), and reporter's notes.  And while the judge might have precluded the juvenile from raising self-defense as a sanction for not filing a pretrial conference report, see Mass. R. Crim. P. 11 (a) (2) (B), as appearing in 442 Mass. 1509 (2004), the better reason for precluding the defense was that it was simply not available to the juvenile.

Although there is fertile ground to conclude that the juvenile had not withdrawn from the rape and that his flight was a continuous part of that crime, see Commonwealth v. Rogers, 459 Mass. 249, 255-256, cert. denied, 565 U.S. 1080 (2011), we need not decide that question.  Here, the juvenile was the initial aggressor in the assault and battery by means of a dangerous weapon against the Home Depot employee.[3]  Indeed, the juvenile brandished a knife at the employee (and others nearby), and the employee responded with nondeadly force to disarm and capture the juvenile.  See Commonwealth v. Vickers, 60 Mass. App. Ct. 24, 29 (2003).

4.  Waiver of jury trial.  The juvenile next claims that his waiver of his right to a jury trial was not knowing and intelligent because, at the time, he did not know he could be

_____

[3] It is of no consequence that the judge misspoke when he referred to the juvenile being the first aggressor in the victim's rape where the juvenile was the first aggressor in both crimes.

6

committed to the Department of Youth Services (DYS) until the age of nineteen.  We disagree.

Essentially, the juvenile claims that he waived his right to a jury trial because he believed that a jury trial would take longer than a bench trial, and he wanted to be tried before he turned eighteen to limit the maximum time of his commitment.  However, other than conjecture, the juvenile offers nothing from the record to support his supposition.  In fact, the juvenile's claim itself implies that he understood the possibility of a commitment to age nineteen, i.e., the very thing he was attempting to avoid.  Also, the fact that this case was continued for the purposes of extending the rehabilitation period before the Supreme Judicial Court established a legal framework for doing so does not, in itself, render the juvenile's waiver of a jury trial not knowing and voluntary.  See Noah N. v. Commonwealth, 489 Mass. 498, 499 (2022).  Finally, the juvenile "does not claim that he misunderstood the scope and impact of this precious constitutional right," or that "any mental or physical incapacity affected his ability to understand the consequences of his choice."  Commonwealth v. Dietrich, 381 Mass. 458, 460-461 (1980).[4]

_____

[4] The juvenile's claims that the continuance violated Apprendi v. New Jersey, 530 U.S. 466 (2000), is without merit.  This was a jury-waived trial where the judge acted as the factfinder.  Also, permitting the short continuance did not violate the

7

5. *The continuance*. Finally, the juvenile claims that the judge erred in continuing his sentencing hearing until the day after his eighteenth birthday for the explicit purpose of circumventing the sentencing limitations of G. L. c. 119, § 58, and that, as a result, the juvenile's sentence should be set aside. We disagree.

Relying on cases on collateral review, the juvenile maintains that the new rule announced in Noah N., 489 Mass. at 502-503, cannot be applied retroactively to him. See Teague v. Lane, 489 U.S. 288, 311-315 (1989); Commonwealth v. Bray, 407 Mass. 296, 303 (1990). However, this case is before us on direct review. Because the juvenile's adjudication of delinquency had not become final when the Supreme Judicial Court announced the new rule in Noah N., it applies to his case retroactively. See Griffith v. Kentucky, 479 U.S. 314, 320-328 (1987). Given this, the juvenile is correct that the judge did not follow the procedure set forth in Noah N. for determining whether the continuance was permissible.[5]

---

juvenile's right to due process. His commitment to DYS was for rehabilitative purposes, not punishment. See Commonwealth v. Ulani U., 487 Mass. 203, 207 (2021). The juvenile was given notice and an opportunity to be heard on the continuance, all of which occurred after he was adjudicated delinquent. See Betterman v. Montana, 578 U.S. 437, 448 (2016).

[5] On the same day the Supreme Judicial Court decided Noah N. the juvenile filed a motion pursuant to Mass. R. Crim. P. 30 (a), as appearing in 435 Mass. 1501 (2001), which the judge denied. The

However, at bottom, this case is moot.  The juvenile completed his DYS commitment over one year ago.  In this posture, where his commitment does not affect the validity of his delinquency adjudications, the juvenile no longer has a stake in the outcome.  See Blake v. Massachusetts Parole Bd., 369 Mass. 701, 703 (1976).  Contrast Matter of a Minor, 484 Mass. 295, 299 (2020) ("individuals committed under G. L. c. 123, § 35, have a personal stake in litigating a wrongful commitment").  A longer period of rehabilitation does not implicate the same concerns that a wrongful commitment does in the context of G. L. c. 123, § 35.

> Adjudications of delinquency affirmed.
>
> Order entered May 9, 2022, denying emergency motion for immediate release affirmed.
>
> By the Court (Meade, Hershfang & D'Angelo, JJ.[6]),

*Joseph F. Stanton*

Clerk

Entered:  October 4, 2023.

---

judge determined that he had implicitly found the necessary components set out in Noah N. but he did so without conducting the required evidentiary hearing.

[6] The panelists are listed in order of seniority.